### In re Arthur L. and Gloria R. BURGESS, Debtors.

**Bankruptcy No. MM13–90–00165.**

United States Bankruptcy Court, W.D. Wisconsin.

July 8, 1991.

Mary Catherine Fons, UAW–GM Legal Services Plan, Janesville, Wis., for debtors.

Robert L. Hersh, Mequon, Wis., for Mortgage Default Services.

William A. Chatterton, Ross & Chatterton, Madison, Wis., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

### I.

Arthur L. and Gloria R. Burgess own a house in Beloit, Wisconsin, which is subject to a real estate mortgage securing a debt to Mortgage Default Services ("MDS"). There is no other security for the debt.

On January 22, 1990, the Burgesses filed a joint petition under Chapter 13 of the Bankruptcy Code. In their schedules, the debtors claim their house as a homestead and list its value at $37,500. They state the total amount due to MDS is $43,-112.71, including $11,658.99 in arrears. The debtors' Chapter 13 plan purports to provide for curing the arrearage and maintaining monthly payments of $503.63.[1]

Debtors propose thirty-six monthly payments of $530.05, or a total of $19,081.80. The plan states that it will provide for full payment of all priority, secured, and unsecured claims. The plan was confirmed on March 13, 1990.

On March 27, 1990, MDS filed a proof of secured claim in the amount of $16,240.14. The claim includes only the arrearage on the debtors' mortgage, attorneys fees and costs, and interest. MDS seeks to have this claim paid from the plan payments the debtors will make to the standing Chapter 13 trustee. MDS has filed no claim for the

---

1. Cure and reinstatement of a mortgage debt is permitted under § 1322(b)(5), *In re Clark*, 738 F.2d 869, 872 (7th Cir.1984), and is the sole exception to the limitation on modification of the rights of a holder of a claim secured only by the debtor's principal residence contained in 11 U.S.C. § 1322(b)(2). *In re Etchin*, 128 B.R. 662, 669 (Bankr.W.D.Wis.1991).

**58**

payments which the debtors propose to make directly (*i.e.*, "outside the plan"), to MDS as "current mortgage payments."

On June 21, 1990, the standing chapter 13 trustee's motion to allow claims was approved. The allowed secured claims totaled $19,786.52 and the allowed unsecured claims $2,735.15, for a total of $22,521.67.

On July 19, 1990, the debtors objected to MDS's claim on a number of grounds.[2] Only their objection based on 11 U.S.C. § 506 is at issue here. The debtors argue that under § 506(a) the claim of MDS is a secured claim only to the extent of their home's fair market value. The excess, they assert, is an unsecured claim entitled only to payments under the plan and subject to discharge upon completion of the plan. To the extent that MDS's claim is unsecured, they further assert, its lien is void under § 506(d). In their objection, the debtors set the amount of MDS's claim at approximately $49,000.00 and the home's fair market value at $38,000.00. Thus the debtors seek to avoid the lien upon approximately $11,000 of MDS's total claim. Although this amount would be an unsecured claim, it would be entitled to 100% payment under the terms of the debtors' plan.

MDS argues that 11 U.S.C. § 1322(b)(2) prohibits the partial avoidance of its mortgage sought by the debtors. MDS maintains that § 1322(b)(2) protects the secured status of its entire claim and precludes the use of § 506(d) to avoid any portion of the lien securing it. MDS sets the amount of its claim at approximately $48,000.00 and the fair market value of the Burgess home at $37,575.00, citing the 1989 real estate bill.

### II.

■ As this court recently decided in *In re Etchin*, 128 B.R. 662, 665 (Bankr. W.D.Wis.1991), the bifurcation and partial avoidance of an undersecured home mortgage by a Chapter 13 debtor violates the specific protection afforded to the rights of holders of claims secured only by the debt-

or's principal residence under § 1322(b)(2). The debtors' objection to the claim of MDS, which attempts to bifurcate and partially avoid the mortgage held by MDS, is therefore denied.

### III.

■ Because the total allowed claims against the bankruptcy estate now substantially exceed the amount of debt scheduled by the debtors, the court must reconsider the confirmation of the debtors' plan. The court in *In re Leiter* indicated that a bankruptcy court's power to reconsider an order is well-recognized and in the Seventh Circuit is guided by F.R.C.P. 60(b):

> In *Central Illinois Co. v. Irving Trust Co.*, (*In re Pottasch Bros. Co., Inc.*), 79 F.2d 613, 101 A.L.R. 1182 (2nd Cir.1935), Judge Hand held that a bankruptcy referee had the "ancient and elementary power" to reconsider an order. In *Wayne United Gas Company v. Owens–Illinois Glass Company*, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937), the Supreme Court held that the bankruptcy court has continuous powers to modify its own orders if no intervening rights are disturbed. [...]

However, the Seventh Circuit in the case of *Matter of Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir.1988), stated that the bankruptcy court's inherent powers to reconsider orders has been merged into the Bankruptcy Rules of Practice and Procedure and the Federal Rules of Civil Procedure. The *Met–L–Wood* Court stated as follows:

> [...] Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time [....] Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule

---

**2.** This objection may well have been untimely, but will be considered on its merits for the purposes of this decision.

60(b) [ ... ] As a natural development from these cases, as well as from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, [ ... ] [w]e conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule. *In re Leiter,* 109 B.R. 922, 924 (Bankr. N.D.Ind.1990).

Relief from judgment under Rule 60(b) may be granted *sua sponte* by the court. *Nowicki v. United States,* 536 F.2d 1171, 1173 (7th Cir.1976). A decision under Rule 60(b) is a matter of the court's discretion. *Del Carmen v. Emerson Elec. Co.,* 908 F.2d 158, 161 (7th Cir.1990). The Rule's requirement that relief be granted within a "reasonable time" also rests within the sound discretion of the court. *Nowicki,* 536 F.2d at 1175. While relief under Rule 60(b) is discretionary, it is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust. *Del Carmen,* 908 F.2d at 161. The court should also look to whether any intervening rights have been affected by the passage of time since entry of the original judgment. *Nowicki,* 536 F.2d at 1175.

The debtors' plan was confirmed with the provision that it met the various requirements of the Bankruptcy Code. *See Matter of Driscoll,* 57 B.R. 322, 327 (Bankr.W.D.Wis.1986); *see also In re Etchin, supra.* This includes the requirement under § 1325(a)(6) that the debtor will be able to make all payments under the plan and to comply with the plan. In this case, complying with the plan requires that the debtors make full payment of all priority, secured, and unsecured claims. At the time the plan was confirmed, the total amount of payments to be made, $19,-081.80, was sufficient to do so. This amount is no longer sufficient to satisfy the claims against the bankruptcy estate, which total $22,521.67 rather than $17,-347.55. Even if the plan were modified to pay nothing on the unsecured claims, the total of allowed secured claims and priority claims (which would include costs of administration equal to approximately 9% of pay-ments made to the trustee) would exceed the plan payment by a substantial amount.

Under the circumstances of this case, the March 13, 1990 order confirming the debtors' plan must be vacated. Not to do so would permit the debtors to treat secured claims other than as required by § 1325(a)(5) and to avoid the feasibility requirements of § 1325(a)(6). At no time did the debtors possess the right to the confirmation of an infeasible plan.