

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-1998

# In re: William Fesq

Precedential or Non-Precedential:

Docket 97-5140

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In re: William Fesq" (1998). *1998 Decisions.* Paper 196.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/196

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 18, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5140

IN RE: WILLIAM FESQ,

      Debtor

BRANCHBURG PLAZA ASSOCIATES, L.P.,

      Appellant

v.

WILLIAM FESQ

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 96-cv-05555)

Argued March 10, 1998

BEFORE: STAPLETON and ALITO, Circuit Judges,
and SHADUR,* District Judge

(Opinion Filed August 18, 1998)

Eric H. Berger (Argued)
Berger & Bornstein, P.A.
237 South Street
Morristown, NJ 07962
 Attorney for Appellant

_____

* Honorable Milton I. Shadur, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

          John F. Bracaglia, Jr. (Argued)
          362 East Main Stret
          P. O. Box 1094
          Somerville, NJ 08876
           Attorney for Appellee

OPINION OF THE COURT

SHADUR, Senior District Judge:

This is an appeal by Branchburg Plaza Associates, L.P.
("Branchburg"), a creditor of bankrupt debtor William Fesq
("Fesq"). Branchburg claims that both the bankruptcy court
and then the district court erred in denying Branchburg's
motion to vacate the bankruptcy court's earlier order
confirming Fesq's Chapter 13 plan. We have jurisdiction
over the appeal under 28 U.S.C. S158(d), and we affirm the
district court's decision.

Background

This long-running dispute between Branchburg and Fesq
goes back to April 16, 1993, when Branchburg recovered a
$69,166.59 judgment against Fesq in New Jersey Superior
Court. On December 17, 1993 Branchburg obtained a writ
of execution against Fesq's house to enforce that judgment.

Fesq then avoided a foreclosure sale of the house byfiling
a Chapter 7 petition on July 14, 1995. That respite proved
short-lived, however, for Branchburg's lien on the real
property survived the Chapter 7 proceeding. Branchburg
again sought to foreclose on its lien shortly after the
Chapter 7 proceeding closed.

Branchburg's persistence led Fesq to file a Chapter 13
proceeding on March 6, 1996[1] that addressed only
Branchburg's lien on the house. Fesq's proposed plan
provided for a single lump-sum payment of $7,050 in full
satisfaction of Branchburg's secured claim. Branchburg's

_____

1. All of the remaining dates referred to here were also during 1996, so
we omit the year designations from here on out.

2

attorney Friedman Siegelbaum ("Siegelbaum")filed a notice of appearance in the Chapter 13 case, but he then failed to attend the Section 341(a) first meeting of creditors or to schedule a Rule 2004 examination of Fesq.2  More importantly, Siegelbaum did not file any objections to Fesq's proposed plan by the August 5 deadline date for such objections. There were consequently no objections to Fesq's proposal, and an order of confirmation was entered on August 15.

Fesq filed a motion to vacate Branchburg's lien immediately upon entry of the confirmation order. On August 30 Branchburg filed a cross-motion to vacate the confirmation order, asserting that its failure to make a timely objection was the result of a computer glitch at Siegelbaum's firm, which had led him to believe that the deadline for the filing of objections to the proposed plan would not arrive until October 5, rather than the actual August 5 date.3 Branchburg argued that it would have objected to several substantive aspects of Fesq's plan but for the computer error.

On October 28 the bankruptcy court's oral ruling granted Fesq's motion and denied Branchburg's cross-motion. That ruling was affirmed on appeal by the district court in an unpublished memorandum opinion. Branchburg then brought a timely appeal to this Court.

Standard of Review

This appeal raises only a question of law, not one of fact. We therefore exercise plenary review over the decision of the district court (In re Fegeley, 118 F.3d 979, 982 (3d Cir. 1997)).

_____

2. All "Section --" references in this opinion are to the Title 11 provisions
of the Bankruptcy Code ("Code"). Both the Bankruptcy Rules and the Federal Rules of Civil Procedure are cited "Rule --," a usage that should not generate any confusion because the former set uses four-digit numbers, while the latter employs two-digit numbers.

3. Branchburg claims that it could not appeal the confirmation order because the 10-day period for filing an appeal had passed before it realized that the confirmation order had been entered.

Revocation of the Confirmation Order

Branchburg's appeal poses the fundamental question whether a final order confirming a debtor's Chapter 13 plan can be vacated without a showing of fraud, an issue that the parties have contested in terms of what grounds are available under law for revocation of such confirmation orders. While fraud is the only predicate that is specifically mentioned in the Code for the revocation of a confirmation order, Branchburg insists that courts may also revoke such orders that have been the consequence of mistake, inadvertence or excusable neglect. This appeal hinges on that point, because Branchburg admits that its failure to object to the confirmation order was the result of a combination of human and computer error, not fraud. So if Branchburg is wrong and if fraud is indeed the only basis upon which we may revoke a Chapter 13 confirmation order, we must affirm the district court irrespective of the potential merit of Branchburg's substantive allegations.

Our analysis must begin with the language of Section 1330(a), the Code provision that deals with the revocation of a Chapter 13 confirmation order:

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

It is of course conventional wisdom that the statute should be read to give some effect to the final phrase "if such order was procured by fraud," for as a general rule of statutory construction "[w]e strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant" (Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)). And here it is particularly unlikely that the final phrase is mere surplusage, because it would have been so easy not to include the phrase if it were really superfluous. Simply excising the phrase from the statute would have left a perfectly sensible sentence that would accomplish every purpose of the current statute--except, that is, for limiting the grounds for relief, the subject that we address hereafter.

4

Ordinary English usage tells us that Section 1330(a) is subject to only two interpretations if we are to avoid rendering meaningless the qualification "if such order was procured by fraud." First, the section can be read to say that a confirmation order can be revoked only upon a showing of fraud, and to set a 180-day time frame within which a motion for such relief may be tendered. Second, the section can be read as only prescribing a 180-day time limit on motions to revoke orders that were procured by fraud, without speaking at all to the subject of other potential grounds for revocation. For the reasons discussed in this opinion, we conclude that the first construction is the more reasonable interpretation of Congress' intent.

Nonetheless Branchburg insists that the second interpretation should be favored and that Section 1330(a) should be read to permit judicial revocation of confirmation orders for reasons other than fraud. Branchburg advances that contention by pointing to Rule 9024, which makes Rule 60(b) generally applicable to bankruptcy cases. In relevant part Rule 60(b), in contrast to Section 1330(a), allows for relief from final orders in the generic sense on a number of bases:

> [T]he court may relieve a party ...from afinal judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ...(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ...or (6) any other reason justifying relief from the operation of the judgment.

Branchburg argues (1) that its counsel's computer mishap qualifies as "mistake, inadvertence...or excusable neglect" under Rule 60(b) and (2) that because Rule 9024 makes Rule 60(b) generally applicable in bankruptcy, the revocation of Fesq's Chapter 13 confirmation order is called for. That position requires an examination of the relationship between Section 1330(a) and Rule 9024 to see whether Branchburg can properly take advantage of Rule 60(b)'s more expansive grounds for relief.

Branchburg wisely does not attempt to argue that Rule 9024 simply trumps Section 1330(a), for when Congress

5

accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated "[s]uch rules shall not abridge, enlarge, or modify any substantive right" (28 U.S.C. S2075). Thus, "[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges may be effected" (In re Hanover Indus. Mach. Co., 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986)). So Rule 9024 cannot validly provide Branchburg with a substantive remedy that would be foreclosed by Section 1330(a).

Branchburg tries to avoid that problem by interpreting Section 1330(a) so that it complements, rather than conflicts with, Rule 9024. Branchburg contends that Rule 9024 (via Rule 60(b)) sets out all of the potential grounds for revoking Chapter 13 confirmation orders and that Section 1330(a) simply shortens the deadline for challenging confirmation orders to 180 days for fraud alone (Rule 60(b) allows parties one year to file motions for relief based on mistake, inadvertence, excusable neglect or fraud). And Branchburg attempts to support that interpretation by pointing to the text of Rule 9024:[4]

> Rule 60 F.R. Civ. P. applies to cases under the code except that...(3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by S 1144, S 1230, or S 1330.

Branchburg obviously prefers to ignore just how strongly counterintuitive--indeed, logically absurd--its position really is. It posits a scenario in which the drafters of Rule 9024 came onto a scene already occupied by a congressional 180-day limitation on the ability of the victims of fraud to be relieved of the consequences of that fraud,[5] and saying something along these lines:

_____

4. Sections 1144 and 1230(a) are companion statutes to Section 1330(a), with the first of those addressing revocation of Chapter 11 confirmation orders and the second dealing with revocation of Chapter 12 confirmation orders.

5. Not even Branchburg has suggested that the use of "may" in Section 1330(a) is permissive in the sense that a fraud victim "may" seek relief within 180 days, and "may" also seek relief more than 180 days, after entry of a confirmation order. Any such reading would plainly render the statute totally meaningless--accomplishing nothing at all.

> We recognize that Congress has provided a remedy for
> the victims of fraud. But we also believe that others,
> though perhaps less deserving (people who wish to be
> relieved from an order of confirmation that was entered
> in consequence of their own negligence or mistake), are
> also entitled to solicitude. So even though Congress
> has chosen to say nothing about people in that latter
> category (as it could easily have done by simply
> omitting the language "if such order was procured by
> fraud" from its Section 1330(a) statute dealing with
> judicial relief via revocation), we'll give those people
> exactly the same opportunity as victims of fraud to ask
> for such relief.

That reading has nothing to commend it, for it is the equivalent of permitting the drafters of Rule 9024(3) to deprive the final phrase of Section 1330(a) of any substantive effect--something that Congress did not choose to do and that neither such drafters nor we judicial readers of congressional legislation are authorized to do. By contrast, if Section 1330(a) is read as stating that an order confirming a plan cannot be revoked except upon a showing of fraud, a complaint to revoke a confirmed plan may still be filed under Rule 60 (as contemplated in Rule 9024(3)) because fraud is one of the bases for relief under that rule.6 Thus our decision today gives effect to both Section 1330(a)(which would of course trump anyway in the event of a conflict between that statute and a rule) and Rule 9024(3).

Heedless of the illogic of its contention, Branchburg would have it that Rule 9024 leaves undisturbed the Section 1330(a) time limit for seeking revocation on fraud grounds, but that the Rule does not treat the statute as having limited the grounds for relief. To that end Branchburg stresses Rule 9024's use of "time allowed" as

_____

6. In addition, although Rule 60(b) cannot be used as a vehicle for revoking such orders for reasons other than fraud, it may still be used to correct some other problems that arise with such orders. So, for example, courts could still redress clerical mistakes via Rule 60(b) without fear of violating Section 1330(a) (cf. 8 Collier on Bankruptcy ("Collier") P1144.07[1] (Lawrence W. King ed. in chief, 15th revised ed. 1997)).

somehow demonstrating that Section 1330(a)'s sole function is to specify an abbreviated time period for challenging confirmation orders because the challenger was defrauded. As a necessary corollary to that conclusion, Branchburg would have it that the phrase "if such order was procured by fraud" in Section 1330(a) is simply permissive rather than exclusive in nature.7 In other words, according to Branchburg Section 1330(a) does not inhibit a court's ability to revoke a confirmation order due to a party's mistake or excusable neglect (for example)--rather the statute merely reinforces that fraud is one of the acceptable reasons to revoke a confirmation order.

Even apart from Branchburg's having glossed over the already-discussed unacceptability of its view that rulemakers can essentially override or eliminate distinctions that Congress has chosen to include in its enactments, Branchburg offers no reason why Congress would find it necessary to reassure courts that fraud-- among all of the grounds for relief enumerated in Rule 60(b) --is a permissible reason to revoke a confirmation order. Surely if any confirmation of the circumstances entitling a litigant to relief were needed, actual fraud on the litigant would be the least likely candidate for such a statutory confirmation. Thus on its face the Section 1330(a) language makes far more sense as a substantive limitation than as a needless permissive reminder. It is hardly surprising, then, that further scrutiny of Branchburg's reasoning (or lack of it) exposes several other fatal flaws.

First, Branchburg's argument relies exclusively on the language of Rule 9024 to extract a strained meaning from Section 1330(a). But we have already confirmed that bankruptcy rules cannot "abridge, enlarge, or modify" the substantive rights afforded by the Bankruptcy Code. Hence Branchburg's attempt to negate the substantive impact of the restriction contained in Section 1330(a) solely on the basis of Rule 9024's language also runs afoul of separation of power principles.

_____

7. Here Branchburg must argue the statute's nonexclusivity in the subject-matter sense explained next in the text, not in the obviously impermissible temporal sense that has been scotched here in n.5.

8

Furthermore, Branchburg's reasoning collapses if applied to related parts of the Code. Rule 9024 also adverts in identical terms to "the time allowed by S1144" for revoking Chapter 11 confirmation orders. If then Branchburg's proposed approach were valid, the Section 1144 ground for relief should be merely permissive as well. But Section 1144 could not be more explicit: It states that a court may revoke a Chapter 11 confirmation order "if and only if such order was procured by fraud." It surely cannot be said that the single Section 1144 ground for relief is merely permissive, and that correspondingly undercuts any legitimacy of Branchburg's parallel argument as to Section 1330(a).

Because there is a difference in locution between the "if and only if" language in Section 1144 and the simple "if" usage in Sections 1330(a) and 1230(a), it is worth a few moments to explain that no intended difference in meaning flows from that distinction. Originally Section 1144 mirrored the language of Sections 1330(a) and 1230(a) by allowing revocation "if such order was procured by fraud," but in 1984 Congress amended Section 1144 to say"if and only if." That amendment was part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. 98-353, Title III S515, 98 Stat. 387), which was intended primarily to cure the constitutional problems in the 1978 Bankruptcy Act identified by Northern Pipeline v. Marathon Pipeline Co., 458 U.S. 50 (1982). Hence most of the Act was devoted to restoring the jurisdiction, procedure and judgeships of the bankruptcy court system, but Subtitle H, aptly named "Miscellaneous Amendments to Title 11," also contained a slew of technical changes to the Code, including the amendment to Section 1144 (Pub.L. 98-353, Title III S515, 98 Stat. 387).

Nothing in the sparse legislative history suggests, nor is there any logical reason to believe, that the 1984 amendment sought to alter Section 1144 to give it a meaning different from the meaning of Sections 1330(a) and 1230(a). Quite to the contrary, there would be no rational purpose for Congress to prescribe a different standard for the revocation of Chapter 11 confirmation orders than for those under Chapters 12 or 13. Why should the ability or

inability of a creditor to revoke a confirmation order due to mistake or inadvertence depend on the debtor's status as an individual, a farmer or a corporation?

Reading the 1984 amendment as simply clarifying the original intent of Congress, on the other hand, preserves the uniformity between the three sections. That approach has consistently been taken by commentators and courts that have had occasion to compare the amended version of Section 1144 with Sections 1230(a) and 1330(a). Thus 8 Collier P1144.02 n.1 refers to the "minor textual difference" between the three statutes and says that the difference "is not substantive and the standards for revocation should be the same under all three chapters." And see In re Hicks, 79 B.R. 45, 47 (Bankr. N.D. Ala. 1987) and In re Edwards, 67 B.R. 1008, 1009 (Bankr. D. Conn. 1986), agreeing that Section 1144 and Section 1330 are "essentially identical."

That treatment also comports with the context and background of the 1984 Act. Subtitle H's name, organization and content provide no support for the idea that Congress sought to make any kind of systemic overhaul of the relationship between Chapter 11 and Chapter 13. On the contrary, Subtitle H's veritable kaleidoscope of minor amendments on a wide array of subjects creates a strong sense that Congress was merely tinkering with the language of the Code to clarify its original meaning.

Though the absence of any legislative history precludes a definitive determination on that score, a bit of detective work has suggested a possible explanation. It seems entirely plausible that such a change found its way to someone's checklist at the time the miscellaneous package of amendments that ended up in the 1984 legislation was being put together because a bankruptcy court opinion had treated fraud as a nonexclusive basis for revoking Chapter 11 confirmation orders. Solon Automated Servs., Inc. v. Georgetown of Kettering, Ltd., 22 B.R. 312, 317 (Bankr. S.D. Ohio 1982), which was issued during the gestation period that produced the miscellaneous 1984 amendments (a period that began in 1982), had suggested that "compelling circumstances," such as when a creditor with a sufficiently large claim to affect the outcome of the

10

confirmation process failed to receive notice, could also constitute grounds for revoking a Chapter 11 confirmed plan. There were no comparable decisions in the Chapter 12 or Chapter 13 contexts, and it is entirely understandable that the sprawling set of 1984 amendments did not create a seamless web by including conforming changes in Sections 1230(a) and 1330(a). There is no warrant for drawing a negative inference from the difference in statutory language.

Enough then for logic--we turn to precedent. Not surprisingly, Branchburg's argument also runs counter to the strong current of the case law. Thus our In re Szostek, 886 F.2d 1405 (3d Cir. 1989) decision has treated fraud as the only predicate that could justify revoking a confirmation order under Section 1330. Szostek, id. at 1413 refused to revoke a Chapter 13 confirmation order even though a creditor alleged that the confirmed plan violated the substantive requirements of Section 1325:

> We conclude that once the [debtor's] plan was confirmed, it became final under S 1327 and, absent a showing of fraud under S 1330(a), it could not be challenged under S 1325(a)(5)(B)(ii) for failure to pay [the creditor] the present value of its claim.

That same reading has commended itself to the Eleventh Circuit as so clearly correct that In re Hochman, 853 F.2d 1547 (11th Cir. 1988) simply affirmed per curiam the reasoning of the district court that had so held, sub nom. United States v. Lee, 89 B.R. 250 (N.D. Ga. 1987). And cf. In re Pence, 905 F.2d 1107, 1110 (7th Cir. 1990), relying for parallel Section 1330(a) purposes on In re Longardner & Assocs., Inc., 855 F.2d 455, 461 (7th Cir. 1988) and its statement that "section 1144 requires a showing of fraud." Even though succinct, Pence's reference to Section 1330(a) as "listing fraud as the only basis for revocation of confirmation" surely further confirms that as the common-sense reading of the statutory language.

Finally, it is not only bankruptcy courts in this Circuit (which are of course bound to follow Szostek) that have agreed that Section 1330(a) establishes fraud as the only permitted ground for obtaining relief from an order of

11

confirmation. District and bankruptcy courts from numerous other Circuits have also echoed that view (examples, listed in order of the Circuits where the lower courts are located, are In re Klus, 173 B.R. 51, 57 (Bankr. D. Conn. 1994); In re Walker, 114 B.R. 847, 851 (Bankr. N.D. N.Y. 1990); In re Woods, 130 B.R. 204, 205 (W.D. Va. 1990); In re Scott, 77 B.R. 636, 637 (Bankr. N.D. Ohio 1987); In re Young, 132 B.R. 395, 397 (S.D. Ind. 1990); In re Trembath, 205 B.R. 909, 915 (Bankr. N.D. Ill. 1997); In re Puckett, 193 B.R. 842, 845–46 (Bankr. N.D. Ill. 1996); In re Hood, 211 B.R. 334, 335 (Bankr. W.D. Ark. 1997); United States v. Edmonston, 99 B.R. 995, 997 (E.D. Cal. 1989); In re Hoppel, 203 B.R. 730, 732 (Bankr. D. Mont. 1997); In re Duke, 153 B.R. 913, 919 (Bankr. N.D. Ala. 1993)).8

Over and above the plain thrust of the statutory language, we conclude that Congress intended that reading of Section 1330(a) because it protects the finality of Chapter 13 confirmation orders. As we have previously recognized, Congress established finality as an important goal of bankruptcy law. On that score Szostek, id. at 1409 repeated the language of In re Penn Central Transp. Co., 771 F.2d 762, 767 (3rd Cir. 1985) that:

> the purpose of bankruptcy law and the provisions of

_____

8. Branchburg cites two cases as purported support for the notion that Rule 60(b) and Rule 9024 empower courts to revoke confirmation orders on grounds other than fraud, but neither case does the job for Branchburg. While In re Burgess, 138 B.R. 56 (Bankr. W.D. Wis. 1991) did rely on Rule 60(b) to revoke a Chapter 13 confirmation order, it is an extraordinarily weak reed on which to lean––the court did not even mention Section 1330(a), let alone attempt to explain why its express limitation should not apply. Indeed, the substantive ground for revocation relied on in Burgess, id. at 59 was directly at odds with our decision in Szostek. Branchburg's second proffer, Southmark Properties v. Charles House Corp., 742 F.2d 862, 872 n. 15 (5th Cir. 1984), is inapposite because the appellants explicitly acknowledged that they were not trying to revoke the confirmation order at issue. Thus, while Southmark, id. at 872-77 did discuss at some length (and ultimately rejected on the merits) a challenge on equitable grounds to the res judicata effect of a confirmation order, the court had no occasion to address whether those equitable grounds (if they had instead been found valid) might have served as a basis to revoke the order.

12

reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

Those considerations, in concert with the dictates of Section 1327,[9] have led courts to impose sharp limits on efforts to attack Chapter 13 confirmation orders (see our ruling in Szostek, id. at 1408-13 that the protection of the finality of Chapter 13 confirmation orders was more important than the obligation of the bankruptcy court and the trustee to ensure that a plan complied with the Code).

Szostek's policy rationale applies with equal force to the issue before us. Revoking a confirmation order is a measure that upsets the legitimate expectations of both debtors and creditors.[10] Interpreting Section 1330(a) as a limiting provision permits such disruption in only a very narrow category of egregious cases. Branchburg's approach, on the other hand, would open the courtroom doors to a large number of post-confirmation attacks. Those added challenges could seriously undermine the integrity of the

_____

9. Section 1327(a) states:

> The provisions of a confirmed plan bind the debtor and each
> creditor, whether or not the claim of such creditor is provided for
by
> the plan, and whether or not such creditor has objected to, has
> accepted or has rejected the plan.

10. Congress' reluctance to undermine the finality of Chapter 13 confirmation orders is further evidenced by the fact that Section 1330(a) permits, but does not require, courts to revoke confirmation orders procured by fraud. Thus, for example, a court might uphold such an order if the debtor had not been responsible for the fraud and if it would be either unnecessary or inequitable to dismiss or convert the case (see 8 Collier P1330.01).

Chapter 13 proceedings, as dissatisfied creditors could seek to drag out the litigation by bringing themselves under Rule 60(b)'s broader rubric in an attempt to extract concessions.

In sum, Branchburg's argument that Section 1330(a)'s terms are merely permissive is both logically and structurally flawed and unsupported by either case law or public policy. Branchburg has provided no persuasive reason for ignoring the plain meaning of the text of Section 1330(a).

We adhere to all the relevant considerations--plain meaning, logic, case law and the policies underlying the Code--to hold that fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order. And as Branchburg admittedly does not assert that Fesq's confirmation order was procured by fraud (only a blunder in the office of Branchburg's lawyer is offered as an excuse), we will look no further into its allegations and will hence affirm the judgment below.

Conclusion

Branchburg's motion to revoke fails to allege a ground for relief recognized by Section 1330(a). We must therefore uphold the district court's judgment affirming the bankruptcy court's denial of Branchburg's motion. We too AFFIRM.

14

STAPLETON, Circuit Judge, dissenting:

The parties, the court, and the public have a compelling interest in the finality of a judgment. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); Fox v. United States Dep't of Hous. & Human Dev., 680 F.2d 315, 322 (3d Cir. 1982). For that reason, a judgment should never be overturned without a showing of a more compelling countervailing interest. Nevertheless, mistakes are made, and justice miscarries. Accordingly, every jurisdiction of which I am aware makes some provision for relief from a judgment. In the federal system generally, the rule is found in Fed. R. Civ. P. 60. In bankruptcy, the rule is found in Fed. R. Bankr. P. 9024, which expressly applies to "an order confirming a plan" as well as to other forms of judgment entered by a bankruptcy court.

Rule 60(b) provides that "the court may relieve a party . . . from a final judgment [because of, inter alia,] mistake, inadvertence, surprise, or excusable neglect" so long as application is made in accordance with a stipulated time schedule. Rule 9024 provides:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may befiled only within the time allowed by S 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by S 1144, S 1230, or S 1330.

Rule 9024 thus incorporates the grounds of relief provided in Rule 60 and then provides a different time schedule with respect to three separate categories of orders. The time limit for application for relief from an order confirming a plan of reorganization is the 180 days specified in the three cited statutory sections.

The court today finds that Congress intended to single out one particular type of judgment--a confirmation order--

15

for special treatment and to sharply limit the availability of relief from such a judgment to a single ground--fraud. It finds this intent in a single statutory provision that appears to me to reflect nothing more than an intent to provide a limitations period for applications for relief from a confirmation order on grounds of fraud. Section 1330(a) of the Code says no more than that "the court may revoke [a confirmation] order . . . procured by fraud" if "request[ed by] a party in interest at any time within 180 days after the date of the entry of [the] order." As I read it, and as the drafters of Rule 9024 must have read it, section 1330(a) says nothing about limiting the grounds on which relief from a confirmation order may be granted. The same may be said for the legislative history of that section.11

Rule 9024 supplements the non-restrictive provisions of section 1330(a), but as a concession to the strong policy of finality, it preserves the time limits imposed by that section. It is not so logically absurd to conclude that the drafters of Rule 9024 thought it prudent to recognize the bankruptcy

_____

11. If any confirmation were needed of the Congressional intent evidenced by a literal reading of section 1330(a), I believe it came with the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Prior to that Act, each of the sections of the Code dealing with revocation of orders confirming reorganization plans originally contained the clause "if such order was procured by fraud." In the Act, however, Congress singled out one of those sections -- section 1144 -- for amendment and explicitly limited the court's power to revoke confirmation orders in Chapter 11 proceedings"if and only if such order was procured by fraud." (emphasis added). The fact that Congress chose not to insert a conforming amendment in sections 1330(a) and 1230(a) strongly suggests that the Congressional intent to restrict the grounds for revoking confirmation orders was confined to section 1144. This makes untenable in my view the negative inferences drawn by the court from the text of section 1330(a). If, as the court suggests, Congress amended section 1144 solely to clarify the original intent of the language previously found in all three sections, I would have expected it to have clarified all three. Rather than assume an inadvertent slip on its part, I deem it more prudent to take Congress at its word. There are any number of reasons why Congress may have regarded it advisable to provide somewhat greater finality for confirmation orders in corporate reorganizations than for confirmation orders in other types of reorganizations.

court's power to consider other compelling bases for revoking a plan confirmation order, and the Rule clearly limits the time for filing such challenges to the same period as that originally imposed by Congress in section 1330(a).

The court logically observes that any court would know that it had the power to revoke a confirmation order procured by fraud without statutory confirmation, and that section 1330(a) must therefore be read as a substantive limitation on the available grounds for relief. But the function of section 1330 is not to reassure courts that they have the power to revoke confirmation plans for fraud. Rather, its function is to provide a check by Congress on a court's natural inclination to entertain charges of actual fraud at any time--such challenges may only be brought within 180 days. This time limitation is the essence of section 1330(a), and Rule 9024 incorporates this essential element. Section 1330(a) contains no restriction on the court's ability to consider any number of bases for revisiting a confirmed plan, and Rule 9024 incorporates the only true restriction in that section. Rule 9024 in no way runs afoul of section 1330(a).

Nor is Branchburg's argument inconsistent with existing precedent. While our opinion in In re Szostek, 886 F.2d 1405 (3d Cir. 1989), contains some broad statements about the concerns of finality in confirmed bankruptcy plans, those statements must be understood in the context of the case to which that opinion is addressed. In July 1987, Fred and Denise Szostek filed a Chapter 13 bankruptcy petition. One of the Szosteks' creditors, the Kissell Company ("Kissell"), filed a proof of its secured claim, and the Szosteks objected to the amount of the claim. A hearing on the objection was scheduled for the same day as the hearing on confirmation of the Szosteks' Chapter 13 plan, but Kissell and the Szosteks agreed to a continuance of the hearing on the objection. Consequently, mistakenly thinking that the Szosteks had also agreed to postpone the confirmation hearing as well, Kissell failed to appear at the confirmation hearing, and the plan was confirmed without objection.

Three days later, Kissell filed an objection to the plan on the basis that it did not provide for present value on

17

Kissell's secured claim.12 Kissell eventually learned that the plan had been confirmed in its absence and without considering its objection. It therefore sought revocation of confirmation under 11 U.S.C. S 1330. Kissell contended that the Szosteks had obtained confirmation of their plan through fraud, and that the plan should never have been confirmed because it failed to conform to the Code's requirement of present value payment on Kissell's' secured claim.

The bankruptcy court found no evidence of fraud, so it denied revocation of the plan under 11 U.S.C. S 1330. The district court reversed. Although it found no fraud, it ruled that the bankruptcy court and the trustee had failed to fulfill their independent obligations to ensure that the plan complied with 11 U.S.C. S 1325(a)(5), which requires payment of present value on secured claims.

We reinstated the bankruptcy court's order because 1) the bankruptcy court's failure to apply section 1325(a)(5) to the plan was not grounds for revoking a confirmed plan in the absence of timely objection by the creditor, and 2) after confirmation of a plan, the policy of finality of bankruptcy plans overrides the court's and the trustee's responsibility to ensure that plans conform to section 1325(a)(5) of the Bankruptcy Code.

Our ultimate--and quite narrow--conclusion in Szostek was simply that "once the Szosteks' plan was confirmed, it became final under S 1327 and, absent a showing of fraud under S 1330(a), it could not be challenged under S 1325(a)(5)(B)(ii) for failure to pay Kissell the present value of its claim." 886 F.2d at 1413. Our holding in Szostek in no way restricted the grounds for revoking confirmation of a plan to fraud. We simply rejected the argument advanced by Kissell--that failure to comply with section 1325(a)(5)(b)(ii) could serve as one of those grounds. Kissell never attempted to rely on Rules 9024 and 60(b) to revoke confirmation of the plan on the basis of mistake or

_____

12. Present value is the amount of the secured claim repaid with interest to account for the time value of money. The Szosteks' plan provided only for payment of the face value of Kissell's claim.

18

excusable neglect, and we were consequently not called upon to evaluate such an argument in Szostek.

The reasoning underlying Szostek is not applicable in this case. The creditor in Szostek sought to excuse its failure to object by relying on a legal argument that it neglected to make at the confirmation hearing. In such a situation, the policy of finality and constructive assent should apply to foreclose the creditor from returning to present an argument that should have been presented at another time. Branchburg's argument, however, is not that the plan should be revoked because Branchburg has a meritorious challenge, but because it was prevented from presenting that challenge before for a reason that is recognized in the procedural rules as a valid basis for revocation. Branchburg's absence should not be viewed as constructive assent because it might be excused and remedied pursuant to statutory authority. Szostek does not control our decision in this case.13

The majority also points to a number of bankruptcy and district court decisions in support of its reading of section 1330(a). I find more persuasive the approach taken by the Ninth Circuit in an opinion addressing a section analogous to section 1330(a) that strongly suggests its disagreement with the premise of these other courts. In In re Cisneros, 994 F.2d 1462 (9th Cir. 1993), the trustee never received notice that the IRS had filed a proof of claim, so the debtor's Chapter 13 plan was confirmed and a full discharge entered after payment in full to all creditors but the IRS. After it discovered the mistake, the IRS moved to reopen the case. The bankruptcy court sua sponte raised the issue of whether it could vacate the discharge on the basis of Fed. R. Civ. P. 60(b), and it concluded that it could in fact grant the government's motion on that basis.

On appeal, the debtor argued that the court lacked the

_____

13. The same can be said for the limited statements on the scope of section 1330(a) in United States v. Lee, 89 B.R. 250, 256 (N.D. Ga. 1987); and In re Pence, 905 F.2d 1107, 1110 (7th Cir. 1990). Neither of these cases considered the issue presented in this case, and the reasoning of these cases does not constrain our analysis here.

19

power to vacate the discharge order in light of section 1328(e), which provides as follows:

> On request of a party in interest before one year after discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--
>
> (1) such discharge was obtained by the debtor through fraud; and
>
> (2) the requesting party did not know of such fraud until after such discharge was granted.14

The debtors argued that, to the extent that section 9024 provided any grounds other than fraud for revoking a discharge, it conflicted with section 1328(e) and was thus invalid.

Although the Ninth Circuit agreed that the statute would have to take precedence in the event of a conflict, it found that no conflict existed and that the bankruptcy court could properly revoke the discharge pursuant to Rule 60(b), as incorporated by Rule 9024.15 Id. at 1466. While Cisneros is also not directly applicable here, it concluded that Rules 60(b) and 9024 apply under a clearly analogous set of circumstances.

Based on the text and legislative history, I am convinced that Congress did not intend to give confirmation orders

_____

14. This statute is thus apparently even more restrictive that section 1330(a); therefore, the Ninth Circuit's reasoning applies a fortiori to this
case.

15. The court also revealed that the bankruptcy court in this case wrongly relied on the holding of In re Gregory, 705 F.2d 1118 (9th Cir. 1983), in support of its conclusion that confirmed plans may only be revoked for fraud. The Cisneros court pointed out that it held in Gregory only that a creditor who had not objected at the confirmation hearing could not mount "a collateral attack" on a plan after it became final. 994 F.2d at 1466-67. But it emphasized that "[w]e had no occasion to consider whether the bankruptcy court had confirmed the plan under the influence of a mistaken view of the facts, and, if so, whether this mistake could have been corrected under Rule 60(b) and Bankruptcy Rule 9024. Gregory is inapposite, and thus unhelpful to the Debtors here." Id. at 1467.

special treatment by making them impervious to challenge save on grounds of fraud. Even if I perceived some ambiguity and were less than convinced about this proposition, however, I would decline to reach the conclusion reached by the court today. Why should we, in the absence of an unambiguous directive of Congress, tie the hands of bankruptcy judges in situations where justice cries out for review of a previously entered judgment. Why, for example, should we render a bankruptcy court powerless to grant relief when an objecting creditor's attorney has a heart attack on his way to a confirmation hearing at which a final order is entered? Moreover, not only would such a holding fail to serve justice, little, if anything, would be gained from it in the way offinality. Under the court's reading of the Code and the Rules, litigants cannot count on the finality of a confirmation order until 180 days after the order is entered. Up until that time, a claim of fraud can be asserted and litigated. While my reading of the Code and Rules would permit claims of a limited variety, other than fraud, to befiled during that period, it would not extend the date upon which a confirmation order becomes unchallengeable.

I respectfully dissent. I would reverse and remand to allow the bankruptcy court to consider Branchburg's request to reopen the plan. I would intimate no opinion on the merits of Branchburg's claim because I believe the bankruptcy court is best situated to make that decision.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

21