**In re Allen and Elizabeth SLACK, Debtors.**

**No. 00–61158 (RTL).**

United States Bankruptcy Court, D. New Jersey.

July 17, 2002.

---

Kirsten B. Ennis, Ennis & Lancellotti, LLC, Clinton, NJ, for Debtors.

Thomas W. Olick, Easton, PA, pro se.

### *OPINION*

RAYMOND T. LYONS, Bankruptcy Judge.

The chapter 13 debtors, Allen and Elizabeth Slack, filed a post-confirmation amendment to Schedule F of their joint petition to add a commercial landlord, Thomas W. Olick, as a pre-petition unsecured creditor. The debtors' confirmed plan provides, *inter alia,* a zero-percent dividend to unsecured creditors. Olick, who commenced a post-petition state court action against Allen Slack for breach of lease, did not learn of the debtors' bankruptcy case until he attempted to get a default judgment against Slack in state court.

Olick filed the instant motion, seeking the following: (1) revocation of the confirmation order, (2) relief from the automatic stay, and/or (3) sanctions against debtors and their counsel pursuant to FED. R.BANKR.P. 9011. In the alternative, Olick seeks leave to file a late proof of claim. Olick argues that his claim against the debtors arose post-petition and therefore is not subject to the automatic stay of 11 U.S.C. § 362. Furthermore, Olick contends that the debtors, through their attorney, have filed their amendment to Schedule F in "bad faith." This court must deny Olick's motion because: (1) Olick has failed to allege or prove fraud which is the sole grounds for revocation of confirmation; (2) Olick's lease was automatically rejected under 11 U.S.C. § 365(d)(4), even though not scheduled, giving rise to a prepetition claim for breach under 11 U.S.C. § 365(g); and (3) the request for sanctions under Rule 9011 is procedurally defective and a pro se litigant cannot recover attorney's fees.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 referring all cases and proceedings under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (B), (G) and (L).

## FACTS

On October 19, 1997, Allen Slack (hereinafter, "the debtor"), along with Robert Rovi and Donald DeBias, leased commercial property located in Easton, Pennsylvania from Thomas W. Olick for the purpose of operating a restaurant. The lease was for five years, commencing November 1, 1997. On April 30, 1998, Robert Rovi, Donald DeBias, Isadore DeBias, and an entity known as Dibby's, Inc. entered into a separate lease agreement with Olick involving the same property. Although styled a "Sub–Lease Agreement," the April 30, 1998 contract appears to be in the nature of an assignment.[1] The debtor was not a party to the April 30, 1998 agreement. The court infers that the debtor left the restaurant business to his former partners.

On November 1, 2000, the debtor and his wife, Elizabeth Slack, filed a joint petition under chapter 13 of the Bankruptcy Code. On the same day, the debtors filed a chapter 13 plan which provided, *inter alia*, a zero-percent distribution to unsecured creditors. Olick was not listed as a creditor in the debtors' schedules, nor was the October 19, 1997 lease agreement included as an executory contract or unexpired lease. The debtors' plan was confirmed without objection on May 15, 2001 and a confirmation order was entered on June 26, 2001.

In late April 2001, the debtor's former partners relocated the restaurant business from Olick's property to a motel across town. In August of 2001, Olick filed a sixty-one page, six-count complaint in the Court of Common Pleas in Northampton County, Pennsylvania, against a myriad of

defendants, including the debtor, for breach of contract, conversion, negligence, and tortious interference with contract. Each of the causes of action relate, in some way, to either the October 19, 1997 lease or the April 30, 1998 "sub-lease" agreement. In Count I of his complaint, Olick alleges that the debtor, Robert Rovi, and Donald DeBias breached the October 19, 1997 lease agreement by (1) failing to pay rents, (plus late fees and interest), (2) failing to make repairs, and (3) failing to make insurance, telephone, security, and other payments. Count I is the only count in Olick's complaint that seeks relief from the debtor.

The debtor failed to respond to Olick's complaint. Therefore, in November of 2001, Olick appeared before Judge Panella of the Northampton County Court of Pleas, requesting the entry of a default judgment. Although the debtor had not answered the complaint, he advised the State Court of his bankruptcy and argued that Olick's action was stayed pursuant to 11 U.S.C. § 362. According to Olick, Judge Panella adjourned the matter to May 3, 2002. The hearing was further adjourned until May 31, 2002, and a trial date was set for July 2002.

On May 3, 2002, the debtors filed an amendment to Schedule F of their chapter 13 petition to include Olick as a pre-petition unsecured creditor. An order approving the amendment was entered on May 9, 2002. On the same day, Olick filed the instant motion, seeking relief from the automatic stay, the revocation of the debtor's confirmation order, and sanctions against the debtors and their attorney pursuant to Fed.R.Bankr.P. 9011. Olick premises his

1. Pursuant to the April 30, 1998 agreement, Olick, as lessor, leased the Easton, Pennsylvania property to Dibby's Silverdollar Café, Inc. and its shareholders, Robert Rovi, Donald DeBias, Isadore DeBias, for a period of five years. The terms of this lease are virtually identical to the terms of the October 19, 1997 lease agreement. Olick specifically reserved all his rights against original tenants.

motion on two basic points: (1) that his claim against the debtors arose post-petition and is therefore not subject to the automatic stay of 11 U.S.C. § 362 and (2) that the debtors, through their attorney, have filed the amendment to Schedule F in "bad faith" and therefore should not enjoy the benefits of confirmation. In the alternative, Olick requests leave to file a late proof of claim. The debtors did not file opposition to this motion. Kirsten Ennis, the debtors' attorney, filed an objection on her own behalf in opposition to Olick's request for Rule 11 sanctions.

## DISCUSSION

### Relief from the Automatic Stay

■ Olick seeks relief from the automatic stay on the grounds that his breach of contract claim against the debtor arose post-petition and therefore is not impacted by the stay under the plain language of 11 U.S.C. § 362. Section 362 provides that a petition filed under the Bankruptcy Code "operates as a stay . . . of . . . the commencement . . . of a judicial . . . action . . . against the debtor that . . . could have been commenced before the commencement of the case under this title." Olick argues that his claim relates to "June 2001 damages" arising from the subject lease agreement. Thus, Olick contends, he "could not have filed a claim against debtor Allan [sic] Slack prior to November 1, 2000 (the date of the Debtors' Bankruptcy Petition)." Even assuming that the breach of lease alleged in Olick's state court complaint occurred after the petition date, this court must deny Olick's prayer for relief from the stay as a matter of law.

■ Pursuant to 11 U.S.C. § 365(d)(4), if the trustee does not assume or reject an unexpired lease of non-residential real property under which the debtor is lessee within 60 days after the date of the order for relief, then such lease is deemed rejected. See *In re Channel Home Centers, Inc.*, 989 F.2d 682, 688 (3d Cir.1993). The filing of the debtors' voluntary petition constituted an order for relief as of November 1, 2000. See 11 U.S.C. § 301. More than sixty days have passed since the order for relief and no party has assumed or rejected the lease agreement between Olick and the debtor. Therefore, the lease agreement has been automatically rejected under Section § 365(d)(4).[2]

Section 365(g)(1) further provides that automatic rejection under 11 U.S.C. § 365(d)(4) constitutes a breach of the rejected lease agreement "immediately before the date of filing the petition." See *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 41 (3d Cir.1989). Any damages arising from the breach of the lease therefore constitute a pre-petition claim. Furthermore, the debtor was obliged by law to surrender the premises to the landlord immediately upon expiration of the sixty-day period. See 11 U.S.C. § 365(d)(4). The subsequent abandonment of the property and failure to pay rent by the debtor's former partners did not increase Olick's claim for damages upon rejection of the lease under Section 365(d)(4). Even though Olick's state court suit relates, in part, to the relocation of the restaurant in the Spring of 2001, by operation of law he had a claim for a pre-petition breach of lease arising from the automatic rejection of Section 365(d)(4). As such, the automatic stay applies to Olick's claim. Since Olick did not allege any alternative grounds for vacating the auto-

---

**2.** In the chapter 13 context, a debtor's failure to schedule an unexpired non-residential lease has no affect on the application of Section 365(d)(4). See, generally, *In re Ford,* 159 B.R. 930 (Bankr.W.D.Wash.1993).

matic stay, this court must deny his motion for relief from the stay.

### Revocation of Confirmation Order

Olick further contends that by failing to list him on their original petition and by waiting until after confirmation to file an amended Schedule F, the debtors' have exhibited "bad faith." Relying primarily upon *Ekeke v. U.S.*, 133 B.R. 450 (S.D.Ill. 1991), Olick argues that "bad faith" constitutes sufficient cause to revoke an order of confirmation pursuant to 11 U.S.C § 1307(c).[3]. The law of the Third Circuit, however, leads this court to a different conclusion.

 In pertinent part, 11 U.S.C. § 1330(a), provides as follows:

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

The Third Circuit Court of Appeals has found that this section, by its plain language, establishes fraud as the *only* permitted ground for obtaining relief from an order of confirmation. See *In re Fesq*, 153 F.3d 113, 119 (3d Cir.1998). Thus, the debtors' bad faith in filing their petition and/or plan is not germane to whether a chapter 13 plan, once confirmed, should be revoked. See *In re Rafferty*, 1998 WL 13584, *3, 1998 U.S.Dist.LEXIS 104, *8 (E.D.Pa.1998). Since Olick has not proven, nor even alleged, that the debtor's failure to include him on the original bankruptcy schedules constituted fraud, this court must deny Olick's motion to revoke the confirmation order.

### Sanctions

Furthermore, Olick seeks sanctions against the debtors and Ms. Ennis, the debtors' attorney, under FED.R.CIV.P. 11, as incorporated in FED.R.BANKR.P. 9011, for filing Amended Schedule F "solely to harass Olick, as a delaying tactic and to cause unnecessary expenses and additional damages." Specifically, Olick requests $1,000.00 as compensation in the nature of attorneys fees.

 Pursuant to FED.R.BANKR.P. 9011(c), a motion for sanctions must be brought separately from other motions or requests (i.e., not simply included as an additional prayer for relief contained in another motion). See *In re Baumblit*, 251 B.R. 442, 443 (E.D.N.Y.2000). Thus, this court must deny Olick's request for sanctions on procedural grounds. Furthermore, it is well-established that a *pro se* party is not entitled to attorney's fees as a sanction. See, e.g., *Cunningham v. FBI*, 664 F.2d 383, 385 (3d Cir.1981).

### Leave to File a Late Proof of Claim

 In the alternative, Olick seeks leave to file a late proof of claim. There is a substantial and inconsistent body of case law addressing the issue of whether a creditor who has not received proper notice of a Chapter 13 bankruptcy case should be permitted to file a proof of claim beyond the statutory deadline. Compare *In re Cole*, 146 B.R. 837, 840–43 (D.Colo. 1992) (extending bar date for omitted creditor on due process grounds); *In re Anderson*, 159 B.R. 830, 836–39 (Bankr. N.D.Ill.1993) (same); *In re Avery*, 134 B.R. 447, 449 (Bankr.N.D.Ga.1991) (same), with *In re Cash*, 51 B.R. 927, 928–29 (Bankr.N.D.Ala.1985) (refusing to extend

---

**3.** Since Section 1307(c) pertains to the dismissal of a chapter 13 case and not the revocation of an order of confirmation, this court will assume that the debtor intended to refer to Section 1330.

bar date for omitted creditor and holding debt nondischargeable); *In re Scott,* 119 B.R. 818, 819 (Bankr.M.D.Ala.1990) (same); *In re Tipton,* 118 B.R. 12, 13 (Bankr.D.Conn.1990) (same). This court need not delve into this murky area of the law. In this district, a creditor that is added to a bankruptcy petition by way of an amendment to the schedules is afforded sixty days from the date of the amendment to file a proof of claim. See Standard Order No. 6 of this Court. Since the debtors filed their amendment to Schedule F on May 9, 2002, Olick had until July 8, 2002 to file a timely proof of claim. Upon reviewing the claims register in the instant case, it appears that Olick filed a proof of claim on or about June 6, 2002. This proof of claim is timely and leave to file a late claim is not needed. For this reason, the court will deny his request for leave to file a late proof of claim as moot.[4]

### CONCLUSION

Olick's state court claim against the debtor arose from a lease agreement that was automatically rejected pursuant to 11 U.S.C. § 365(d)(4). Under Section 365(g), damages resulting from the breach of this lease agreement constitute pre-petition claims subject to the automatic stay of 11 U.S.C. § 362. Since Olick's prayer for relief from the stay was premised solely on the contention that his breach claims against the debtor arose post-petition, this request must be denied. Further, under the law of this circuit, "bad faith" does not constitute sufficient grounds to revoke an order of confirmation. Because Olick

failed to establish, or to even allege, that the debtors' actions or inactions satisfy the elements of fraud, Olick's motion to revoke the confirmation order pursuant to Section 1330 is similarly denied. In addition, a request for sanctions under Rule 11 must be filed independently from other motions or requests. Since Olick sought such sanctions as an alternative prayer for relief within the context of this motion, this request must be denied on procedural grounds. Also, a pro se litigant may not be awarded attorney's fees. Lastly, because Olick filed a proof of claim in a timely fashion, his motion for leave to file a late claim is denied as moot.

**4.** Even though the debtors' confirmed plan pays no dividends to unsecured creditors, filing a proof of claim in this case may not be a useless act. For example, the debtors may not complete their plan and convert their case to chapter 7. In such event, the chapter 7 trustee may determine that there are assets available for distribution among creditors, including Olick. Claims filed in the chapter 13 case prior to conversion are deemed filed in the chapter 7 case. See FED.R.BANKR.P. 1019(3). As another example, the debtors' confirmed plan may be modified to increase payments to unsecured creditors under 11 U.S.C. § 1329(a)(1), which would benefit Olick. Cf. *Judd v. Wolfe,* 78 F.3d 110 (3d Cir. 1996) (chapter 7 case).