**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In Re:

DAVID OGLE MIDKIFF and
ANITA JOYCE MIDKIFF,

    Debtors.

---

DAVID OGLE MIDKIFF and
ANITA JOYCE MIDKIFF,

    Appellants,

    v.

MARK R. STEWART,
Chapter 13 Trustee,

    Appellee.

No. 02- 8004

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE**
**PANEL FOR THE TENTH CIRCUIT**
**(BAP No. WY-01-032)**

---

Georg Jensen, Esq., Cheyenne, Wyoming, for Appellants.

James R. Belcher, Holland and Hart, LLP, Cheyenne, Wyoming, for Appellee.

---

Before **HENRY, HOLLOWAY,** and **MURPHY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

In this case, we face the familiar choice between finality and accuracy. We choose accuracy, and we therefore hold that Rule 9024 of the Federal Rules of Bankruptcy Procedure may be used to provide relief from a bankruptcy discharge order. Exercising jurisdiction under 28 U.S.C. § 158(d), we thus AFFIRM the decisions of the Bankruptcy Court and of the Bankruptcy Appellate Panel vacating a discharge order and allowing a trustee to collect and disburse an income tax refund under the terms of a bankruptcy plan.

## I. BACKGROUND

The appellants, Dale Ogle Midkiff and Anita Joyce Midkiff (the Midkiffs), filed for relief under Chapter 13 of the Bankruptcy Code on January 8, 1998. The Midkiffs' bankruptcy plan required payments for at least thirty-six months, up to a maximum of forty-one months. The plan included a provision that income tax refunds to which the Midkiffs would be entitled during the first thirty-six months of the plan were to be deemed "disposable income" and submitted to the Trustee.[1] Aple's Supp. App. at 7 ¶ 1.C. (Second Amended Chapter 13 Plan, filed Apr. 6, 1998).

---

[1] The original Trustee of the plan was Sharon A. Dunivent. Her motion to designate Mark R. Stewart as substitute appellee was granted on February 8, 2002.

On March 6, 2001, thirty-four months into the plan, in response to a request from the Midkiffs to prepay their remaining obligations, the Trustee sent a letter informing them that $285.92 was needed to complete the plan. The Trustee soon received the Midkiffs' final payment, and on April 4, 2001, the Trustee filed her Certificate of Completion. On April 20, 2001, the Trustee filed her "Final Account and Petition for Final Decree." On April 24, 2001, the Bankruptcy Court entered the Debtors' Discharge.

Also on April 24, however, the Trustee filed a "Revocation of Trustee's Certificate of Completion," noting that the Trustee had received the Midkiffs' 2000 federal tax refund "[a]fter filing the [C]ertificate [of Completion] but before the discharge had been granted." Aple's Supp. App. at 1 (Revocation of Trustee's Certificate of Completion, dated Apr. 24, 2001). Shortly thereafter, the Trustee filed in the Bankruptcy Court a "Chapter 13 Trustee's Request to Vacate Order Discharging Debtor," Aple's Supp. App. at 2 (filed May 2, 2001). She stated that on April 24, after she had filed her Certificate of Completion, she had received a check from the United States Treasury (dated April 20, 2001) in the amount of $4974.00 for the Midkiffs's 2000 federal tax refund, which was "disposable income" under the plan. *Id.* at 3-4. The Trustee asserted that the Discharge Order, which the Bankruptcy Court had entered at the request of the Trustee, was entered by mistake, because the Trustee had been "surprised by newly discovered

evidence." *Id.* at 5. This, the Trustee concluded, justified vacating the Discharge Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, which provides for relief from final orders under conditions including mistake, surprise, and newly discovered evidence.

After a telephonic hearing, the Bankruptcy Court found that the tax refund resulted from the Midkiffs' income during the relevant three-year period and that, according to the plan, the tax refund was disposable income and must be applied to the plan payments. The Bankruptcy Court then granted the Trustee's request to vacate the Discharge Order to allow the Trustee to collect and disburse the income tax refund in accordance with the plan. The Bankruptcy Appellate Panel (BAP) affirmed. *In re Midkiff*, 271 B.R. 383, 388 (B.A.P. 10th Cir. 2002).

## II. DISCUSSION

The parties agree that there are no factual disputes in this case. "In our review of BAP decisions, we independently review the bankruptcy court decision. Where . . . [t]here are no factual disputes and the issues on appeal pertain to the proper application of bankruptcy statutes and the interpretation of case law, our review is de novo." *In re Tuttle*, 291 F.3d 1238, 1240 (10th Cir. 2002) (internal quotation marks and citation omitted).

We first consider the threshold question of whether the Bankruptcy Court's decision to vacate the Discharge Order is permitted. We then proceed to determine whether the Midkiffs' plan requires that the funds at issue be turned over to the Trustee for disbursement.

## A. Vacating the Discharge Order

The Federal Rules of Bankruptcy Procedure allow for relief from final orders on the same terms as the Federal Rules of Civil Procedure. "Rule 60 F.R.Civ.P. applies in cases under the [Bankruptcy] Code." Fed. R. Bankr. P. 9024 (also listing exceptions not pertinent to this case). Rule 60 provides relief from final orders under various circumstances. *See* Fed. R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding [due to] mistake, inadvertence, surprise, . . . excusable neglect[, or] newly discovered evidence.")

The Bankruptcy Code also, however, specifies that discharges may only be revoked when there has been unknown fraud, and only upon notice and hearing:

> On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if-- (1) such discharge was obtained by the debtor through fraud; and (2) the requesting party did not know of such fraud until after such discharge was granted.

11 U.S.C. § 1328(e) (emphasis added).  The hearing must be an adversary proceeding.  Fed. R. Bankr. P. 7001(4) ("[A] proceeding to object to or revoke a discharge [is an adversary proceeding].")

The BAP nevertheless held that Rule 9024 allowed the Bankruptcy Court to vacate the Discharge Order without proof of fraud.  *Midkiff*, 383 B.R. at 386.  In reaching that conclusion, the BAP relied substantially on *In re Cisneros*, 994 F.2d 1462 (9th Cir. 1993).

Writing for the Ninth Circuit, Judge O'Scannlain concluded in *Cisneros*: "A Chapter 13 debtor's right to have his discharge revoked only for fraud (and not on general equitable grounds or for some reason that would justify revocation of a Chapter 7 discharge) is in no way infringed when a court vacates an order of discharge entered by mistake." *Id.* at 1466. *Cisneros* involved a debtor who, unlike the Midkiffs, had not yet made all scheduled payments under the plan. Even so, there is "no reason to believe that Congress intended § 1328(e) to prevent the bankruptcy court from correcting its own mistakes." *Id.*  The *Cisneros* court went on to explain that the word "only" in § 1328(e) could be explained by Congress's intent to exclude certain Chapter 7 proceedings from being imported into the Chapter 13 context. *Id.*

Following *Cisneros*, the BAP held that in spite of § 1328(e)'s restrictions on revoking discharges, the Bankruptcy Court retained authority to vacate the

Midkiffs' discharge to allow the Trustee to collect and disburse the tax refund. The BAP reasoned that the Trustee's lack of knowledge of the incoming tax refund was "the kind of mistake contemplated by Rule 60(b)" and that "the Bankruptcy Court did not err in vacating the Debtors' discharge pursuant to Fed. R. Bankr. P. 9024." *Midkiff*, 271 B.R. at 386.

In challenging that conclusion in this appeal, the Midkiffs again argue that the § 1328(e) restrictions limit the Trustee's authority to vacate a discharge under Rule 9024. They also contend that, even if Rule 9024 does authorize the vacating of discharges on grounds other than those specified in § 1328(e), the Trustee's lack of knowledge of the Midkiffs' tax refund is not the kind of "mistake" contemplated by Rule 9024. Neither argument is persuasive.

### 1. The Relationship between § 1328(e) and Rule 9024

We are mindful that "[t]he bankruptcy court is, after all, a court of equity, and it strikes us as anomalous in this context to say that the Debtors have a right to retain that which they had no right to receive in the first place." *Cisneros*, 994 F.2d at 1466.

Moreover, as the Trustee argues on appeal, the statute specifies that "the court may revoke such discharge only" under certain conditions, 11 U.S.C. § 1328(e) (emphasis added), whereas the court here did not "revoke" the discharge

at all.  Rather, it "ordered that the Court's Discharge Of Debt After Completion of Chapter 13 Plan, dated April 24, 2001 is <u>vacated</u> to the extent, and for the sole purpose, of allowing the Trustee to collect and disburse the tax refund in accordance with the Debtors' Chapter 13 plan."  Aplts' App. at 6-7 (Order Granting Trustee's Request to Vacate Order Discharging Debtor for Limited Purpose of Collecting and Disbursing Federal Income Tax Refund, filed May 10, 2001) (emphasis added).

The Order was not titled a "revocation," and the Bankruptcy Court specifically indicated that the purpose of the order was limited and specific.  If the Bankruptcy Court had wanted to "revoke" the discharge, it presumably knew how to use that word, which appears prominently in the Bankruptcy Code.  Indeed, revocation involves far more than temporarily setting aside a discharge.  "[R]evocation of discharge . . . has the same effect as a denial of discharge.  'The revocation of a discharge makes the discharge a nullity . . .'  The result then in either revocation or denial of discharge is obviously that the bankrupt does not receive a discharge."  *In re Hairston*, 3 B.R. 436, 438 (Bankr. N.M. 1980) (quoting 1A *Collier on Bankruptcy*, § 15.14, at 1514 (14th ed. 1978)).  When a discharge is revoked, "[t]he debtor is not released from personal liability for any pre-petition obligation, regardless of whether the obligation is described as non-dischargeable by statute or not.  In addition, the permanent injunction embodied

-8-

in the order of discharge never becomes applicable, or is revoked as part of the order of discharge." Rosemary Williams, Annotation, *Creditor's Right to Have Bankruptcy Discharge of Individual Debtor Revoked, Vacated, and Set Aside*, 138 A.L.R. Fed. 253, 288 (1997) (footnotes omitted). By contrast, a Rule 60(b) motion "does not affect the finality of a judgment or suspend its operation." Fed. R. Civ. P. 60(b). Thus, when a court grants relief under Rule 60(b), the discharge is not "revoked" but is simply altered to provide limited relief as appropriate under the circumstances.

It is true that the words "revoke" and "vacate" have sometimes been used interchangeably. *See, e.g., In re Fesq*, 153 F.3d 113, 115 (3d Cir. 1998) ("[This] appeal poses the fundamental question whether a final order confirming a debtor's Chapter 13 plan can be vacated without a showing of fraud, an issue that the parties have contested in terms of what grounds are available under law for revocation of such confirmation orders.") Importantly, however, it was the parties themselves in *Fesq* who chose to contest the vacating of an order on the basis of the legal standards governing revocations. At best, therefore, that characterization constitutes the "law of the case," not a legal holding that equates revocation with vacation.

The decision in *Fesq*, in fact, provides further support for the distinction between the revocation and the vacation of discharge orders. In that case, the

Third Circuit considered a request by a creditor to revoke a confirmation order (governed by the provisions of 11 U.S.C. § 1330, which are analogous to § 1328's rules governing discharges). The creditor in *Fesq* wished to file objections to the confirmed plan, on the basis that a "computer glitch" at his lawyer's firm had prevented him from timely filing objections prior to the filing of the confirmation order. *Id.* at 114. The creditor argued that he was entitled to relief under Rule 9024. Arguing in favor of finality, *id.* at 119, the *Fesq* court chose not to allow relief from the confirmation order.

The Third Circuit's refusal to grant relief under Rule 60(b) is thus a reflection of its desire to prevent a creditor from forcing a confirmed plan to be re-written without bringing an adversarial action and without asserting fraud. We are faced with no such request for substantive changes in the Midkiffs' plan. The Trustee here acted as soon as she received the new evidence and requested only that the Bankruptcy Court recognize that the tax refund was covered by the plan. No changes were made to the plan, because none were requested. The Midkiffs were merely prevented from receiving an undeserved windfall.[2]

---

[2] We note that, even with such a potentially persuasive basis for preferring finality over accuracy, *Fesq* was not decided unanimously. The dissenting judge there noted that because "mistakes are made, and justice miscarries . . . every jurisdiction of which I am aware makes some provision for relief from a judgment," 153 F.3d at 120 (Stapleton, J., dissenting), and concluded that the logic from *Cisneros* should be applied to allow courts to

(continued...)

Our decision in *In re Gledhill*, 76 F.3d 1070 (10th Cir. 1996) provides

further support in an analogous setting.  There, we held that Fed. R. Bankr. P.

7001(7) (specifying that "a proceeding to obtain an injunction or other equitable

relief" is an adversary proceeding) does <u>not</u> preclude the use of Rule 60(b) to

obtain relief by motion.

> Rule 7001 lists ten classes of actions which require the
> initiation of an adversary proceeding.  The list does not
> include requests for relief under Rule 60(b). . . .
> Consequently, the plain language of Rule 9024 allows a
> party to request Rule 60(b) relief from a bankruptcy
> court order granting relief from stay by filing a motion.

*Id.* at 1078.[3]

---

[2](...continued)
correct mistaken confirmation orders.  *Id.* at 123.  We need not decide whether
our decision today should apply to confirmation orders.  We do, however, observe
that if *Fesq* was a close call, then the question here is even easier to resolve in
favor of accuracy.

[3]    The dissent in *Gledhill* does not contest the legitimacy of that
conclusion but argues instead that the Bankruptcy Court had not actually provided
relief under Rule 60(b).  Rather, it had provided injunctive relief.  *Id.* at 1086
(Kelly, J., dissenting) ("In its brief, [the appellant] asserts that the Trustee's
requested relief constituted injunctive relief, *not* Rule 60(b) relief, and should not
have [been] made by motion but through the filing of an adversary proceeding in
accordance with Fed. R. Bankr. P. 7001(7).") (quotation marks omitted.)
    The disagreement on the *Gledhill* panel, therefore, was not over whether
Rule 60(b) could be used to provide relief, but rather whether the Bankruptcy
Court in that case had truly granted Rule 60(b) relief at all.  We face no such
difficulty here.  The relief granted by the Bankruptcy Court was limited to
correcting a "mistake" based on "new evidence" that "surprised" the Trustee and
the court, all of which are mentioned specifically in Rule 60(b).  *See* Fed. R. Civ.
P. 60(b)(1)-(2).

<u>2. Mistake under Rule 9024</u>

The Midkiffs further argue that even if Rule 9024 does authorize the vacating of discharge orders, the Trustee failed to establish that her lack of knowledge of the tax refund constituted the kind of mistake warranting relief under Rule 9024. They contend that the burden was on the Trustee to investigate any future tax refunds that might have been due the Midkiffs, making the "mistake" not one to be forgiven.

The Midkiffs cite no authority for this assertion. We again find ourselves in agreement with the *Cisneros* court:

> We acknowledge that the problems that have arisen in this case are ultimately attributable to the failure of the Trustee to learn that the IRS had filed a proof of claim. For present purposes, however, this is immaterial. The order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been apprised of the actual facts, it would never have entered the order.

994 F.2d at 1467.

Moreover, the Midkiffs were best situated to know about the impending tax refund, because they had filed their tax return and knew that a refund was forthcoming. The party best situated to provide relevant information usually bears the burden of doing so. For example, in federal tax disputes, even after the recent adoption of the burden-shifting rules, taxpayers are still required to

"maintain[] all records required under this title and [to cooperate] with reasonable requests . . . for witnesses, information, documents, meetings, and interviews." 26 U.S.C. § 7491(a)(2)(B) (Taxpayer Bill of Rights 3, July 22, 1998). Expecting bankruptcy trustees to maintain information pipelines to the IRS regarding the possibility of impending tax refunds is wholly unreasonable.

We continue, of course, to expect that trustees will carefully administer the plans under their authority. *See esp.* 11 U.S.C. § 704(4) ("The trustee shall . . . investigate the financial affairs of the debtor"); 11 U.S.C. § 1302(b)(4) ("The trustee shall . . . assist the debtor in performance under the plan"). Nevertheless, debtors retain their duty to inform their trustees of relevant developments in their financial situations, including tax refunds due for periods governed by their plans. *See* 11 U.S.C. § 521 ("The debtor shall . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title, [and] surrender to the trustee . . . any recorded information, including books, documents, records, and papers, relating to property of the estate.") We emphasize that "a debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law." *In re Beach*, 281 B.R. 917, 921 (B.A.P. 10th Cir. 2002).

-13-

### 3. Hiding Income Through Excessive Tax Withholding

As an important matter of public policy, the BAP in this case also pointed out that adopting the Midkiffs' proposed rule would allow debtors to manipulate their tax returns to hide income. That is, by withholding excessive amounts of money from their paychecks in the final year of a bankruptcy plan and then receiving the excess as a tax refund after the plan is discharged, unscrupulous debtors could effectively cheat their creditors. *Midkiff*, 271 B.R. at 388.

Indeed, the Trustee here asserts that the Midkiffs were engaged in just that kind of chicanery: They requested a payoff amount from the Trustee in early March 2001; the Trustee sent a plan payoff letter dated March 6, 2001; the Trustee received the check for full prepayment six days later; and two days after that, on March 14, the Midkiffs signed and mailed their 2000 tax return to the IRS. This, the Trustee argues, strongly suggests that the Midkiffs were trying to close the plan before the 2000 tax refund was received, thus allowing them to keep the money.

While the timing of the Midkiffs' actions does offer grounds for suspicion, we need not express an opinion on the Midkiffs' motives in this case. Whether the Midkiffs were carrying out a nefarious plan or were entirely oblivious to the import of their actions, the Bankruptcy Court's response was appropriate. The rule that we adopt, moreover, will prevent future ill-motivated debtors from

-14-

engaging in such a scheme. Even if that is not what the Midkiffs intended to do here, therefore, our decision today sets the most appropriate rule going forward. Where equity, efficiency, and the law all point in the same direction, we are comfortable in following that path.

**B. Ownership of the Tax Refund Under the Plan**

Having resolved the threshold question in favor of the Trustee, we must now consider the Midkiffs' additional argument. They contend that under 11 U.S.C. § 1325(b)(1)(B), the Trustee was not entitled to the tax refund.

A court may not approve a plan unless "the plan provides that all of the debtor's <u>projected</u> disposable income to be <u>received</u> in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). The Midkiffs contend that because the tax refund in question was not "projected" at the time the plan was approved, and because they did not actually "receive" the tax refund within the three-year period, the Trustee is not entitled to it. We are not persuaded by these arguments.

The Midkiffs fail to note that § 1325(b)(1), which leads into subsection (b)(1)(B), makes it clear that the ensuing statutory requirements are conditional: "If the trustee or the holder of an allowed unsecured claim objects to the

-15-

confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--." There is no indication before us that any relevant party objected to the confirmation of the plan, which means that the ensuing conditions are not relevant here.[4]

Moreover, even if § 1325(b)(1) were relevant to our analysis, it merely provides a minimum set of provisions that any bankruptcy plan must contain. The Midkiffs' plan set standards higher than the minimum, and we must enforce those higher standards.

The Midkiffs' argument is thus ultimately defeated by the language of the plan, which expressly addressed the matter of tax refunds and stated: "For purposes of determining disposable income, tax refunds to which the debtor(s) is entitled during the first 36 months of the plan are deemed disposable income

---

[4] Even assuming that § 1325(b)(1)(B) is binding, however, we still would have no reason to reverse the courts below. The Midkiffs argue that the only tax refunds owed to the plan were those "projected" at the time the plan was approved. Midkiff Br. at 7-10. They seem to suggest that only those tax refunds that were known *in an exact amount* at the time of the plan's filing would be included in disposable income. That is, if it was impossible to "project" in May 1998 that there would be a tax refund of $4974.00 due for the year 2000, then the refund is not included in disposable income. We are unconvinced. In this context, the most sensible meaning of the phrase "projected disposable income" would include income that the debtors are likely to earn, taking account of any tax liabilities and refunds. *See Schusterman v. United States*, 63 F.3d 986, 989 (10th Cir. 1995) ("In statutory interpretation we look to the plain language of the statute and give effect to its meaning."). The plain meaning of "projected disposable income" includes tax refunds, because refunded tax payments are at the disposal of the taxpayer.

unless otherwise ordered by the court and will be submitted to the chapter 13 trustee." Aple's Supp. App. at 7 (emphasis added); *see also Midkiff*, 271 B.R. at 384 (citing the plan). The order confirming the plan echoed that language: "For purposes of determining disposable income, income tax refunds to which the debtors are <u>entitled</u> during the first 36 months of the plan are deemed disposable income, unless otherwise ordered by the court, and will be submitted to the chapter 13 trustee, subject to any setoff rights of the Internal Revenue Service." Aple's Supp. App. at 11 (Order Filed May 6, 1998) (emphasis added).

The tax refund at issue was based on the calendar year 2000. As the BAP concluded, the Midkiffs "were entitled to the tax refund at the end of [that] tax year--December 31, 2000, which was during the first 36 months of the plan." *Midkiff, 271 B.R. at 388*; *see also*, *In re Glenn*, 207 B.R. 418, 420 (E.D. Pa. 1997) (noting that "the vast majority of courts to consider this issue have held that a taxpayer's interest in a tax refund arises at the end of the taxable year"). Thus, under the terms of the plan, the tax refund constitutes "disposable income" to which the Midkiffs were "entitled" and which the Midkiffs were obligated to submit to the Trustee.

# III. CONCLUSION

Bankruptcy Rule 9024 allows the Bankruptcy Court to provide relief from a final judgment or order. We hold that 11 U.S.C. § 1328(e) does not prevent the Bankruptcy Court from providing relief under Rule 9024. We also affirm the lower courts' rulings that the Midkiffs' plan specifically included as "disposable income" the tax refund for calendar year 2000. Therefore, it was not error for the Bankruptcy Court to vacate the discharge order to allow the Trustee to distribute the tax refund under the plan.

Accordingly, we AFFIRM the holdings of the Bankruptcy Court and the Bankruptcy Appellate Panel.