**Michale Thomas DEMSKE and Cheryl Renee Demske, Debtors.**

**No. 05–05819–3F.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 6, 2007.

Lansing J. Roy, Esq., Jacksonville, FL, for Debtors.

Marsha Brown, Esq., Jacksonville, FL, for Trustee.

### ORDER DENYING DEBTORS' MOTION TO MODIFY CONFIRMED CHAPTER 13 PLAN WITHOUT PREJUDICE

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Michale Thomas Demske and Cheryl Renee Demske's ("Debtors") Motion to Modify Confirmed Chapter 13 Plan ("Motion to Modify") and the Chapter 13 Trustee's (the "Trustee") Objection to the Motion to Modify ("Objection"). The Court held a hearing on January 31, 2007. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Based upon the evidence presented and the arguments of the parties, the Court finds it appropriate to deny Debtors' Motion to Modify without prejudice.

Debtors filed for Chapter 13 relief under the Bankruptcy Code on June 1, 2005. Their Fifth Amended Plan was confirmed on June 9, 2006. (Debtors' Ex. 2.) The order confirming the Chapter 13 plan ("Confirmation Order") specifically states that "the Debtors are[ ] required to fund the plan during the first three years of the plan using all disposable income." (*Id.*) The Fifth Amended Plan was confirmed without objection of the Trustee. The Fifth Amended Plan also provided for no payments to the allowed unsecured claimants.

Just short of six months after their plan had been confirmed, on December 6, 2006, Debtors filed a First Post Confirmation Modified Chapter 13 Plan ("Modified Post–Confirmation Plan"). (Debtors' Ex. 5.) The Modified Post–Confirmation Plan stated that Debtors proposed to use the proceeds from a $195,000 mortgage loan from Florida Home Lending Group to pay off the existing mortgage on their homestead property. The Debtors also intended to use the loan proceeds to create sufficient funds to send to the Trustee to pay off their plan early and obtain a Chapter 13 discharge.

At confirmation, Debtors had a mortgage through Chase Manhattan Mortgage containing an Adjustable Rate Rider ("ARM"). The ARM provided for an initial interest rate of 7%, with changes to the interest rate and the monthly payments, which began on January 1, 2007 and were to increase every six months thereafter, up to a maximum of 14%. (Debtors' Ex. 3.) Debtors' January 2007 payment, as evidenced by their mortgage loan statement (Debtors' Ex. 7), showed that their interest rate had already increased to 8.5%.

Debtors argue that the disposable income test of 11 U.S.C. § 1325(b) does not apply to modifications simply because that statute has not been incorporated in § 1329, by virtue of the plain language of the statute.[1] The Court disagrees. The Court finds that § 1325(b) is incorporated into § 1329 for the parallel rationale that it is not incorporated—the two sections are related, but one section cannot supercede the other. Section 1329 sets additional standards for *modifications* of the original

---

1. Section 1329(b)(1) specifically references §§ 1322(a), 1322(b) and 1323(c).

confirmed plan. Modification is just that, an alteration of the confirmed plan, not a fresh-from-scratch-original plan to be considered by the court. A debtor cannot supply a plan to the court which incorporates all of debtor's disposable income, and then turn around post-confirmation and remove his or her disposable income under the guise of modification, while simultaneously claiming that the creditors can only object using those provisions listed by § 1329. That would in essence permit the debtor to file a new, disposable-income-free post-confirmation plan, not a proposed modification of a confirmed plan.[2] Therefore, § 1325(b) is not incorporated into § 1329—a debtor must abide by § 1325(b) when submitting a Chapter 13 plan to be confirmed by a court, and must separately follow § 1329 when proposing to modify terms of the original confirmed plan. But a debtor cannot alter the essence of the confirmed plan through modification, as that would allow the debtor a second fresh-start unencumbered by the warranted objections by his or her creditors.[3]

■ Because §§ 1325(b) and 1329 are separate provisions dealing with two different issues, the Court need not address Debtors' argument that the Trustee waived her opportunity to use § 1325(b) by failing to use that objection at the confirmation hearing. A party cannot waive an objection if there is no basis for using it. By providing that all of Debtors' disposable income was to be included in Debtors' Fifth Amended Plan, the Trustee had no reason to object under § 1325(b). If the disposable income is incorporated into a debtor's plan when the trustee objected under § 1325(b), then the court agreed with the trustee's objection. If the trustee raises § 1325(b) as an objection and all of a debtor's disposable income is not included in the plan, then the court found justification for the debtor's withholding part of his or her disposable income.

This Court almost always requires all debtors to include all of their disposable income in their Chapter 13 plans, as this Court does not endorse forgiveness plans. For pre-BAPCPA cases, the debtor must include all disposable income for a three-year period; for post-BAPCPA cases, the debtor must include all disposable income for the commitment period. If a trustee before this Court objects to confirmation under § 1325(b), it is that the payment provided by the debtor does not include *all* of his or her disposable income for either the three-year period or the commitment

**2.** See *In re Keller*, 329 B.R. 697 (Bankr. E.D.Cal.2005). In *Keller*, the court suggests that

> if a court is prepared to permit a debtor to accelerate payments, the same logic would permit the deferral or reduction of monthly plan payments as long as, by the last month of the plan, the payments have been caught up.... This is not permitted because a debtor, like a creditor, is bound by all plan provisions, including those requiring regular monthly payments. *See* 11 U.S.C. § 1327(a). Second, a chapter 13 plan is required to provide for the means of its execution.... It makes little sense to require that a plan specify how it will be funded, and to require regular monthly payments that continue for at least 3 years,

then verify that the debtor has the ability to make such payments only to permit the debtor to perform differently than required by the plan. *See* 11 U.S.C. §§ 1322(a)(1), 1325(a)(6) & (b).

*Keller*, 329 B.R. at 699–700.

**3.** If the plan or confirmation order requires that all disposable income must be used to fund the plan, then *that provision* is unmodifiable. *See, e.g., Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1202 (10th Cir.2003) ("[E]ven if § 1325(b)(1) were relevant to [the court's] analysis, it merely provides a minimum set of provisions that any bankruptcy plan must contain. The [debtors'] plan set standards higher than the minimum, and [the court] must enforce those higher standards.")

period, whichever is applicable. This can be raised at any time before or after confirmation, if the trustee has reason to believe that the debtor has more disposable income.[4]

■ A debtor's disposable income provision cannot be modified, but the amount of that disposable income can be modified upon a change of circumstances that reduces or increases the debtor's disposable income. Initially, the Court notes that section 1329 does not bestow an absolute right upon a debtor to modify his or her plan after confirmation. Instead, it merely states that the plan "may" be modified, and thereupon lists the situations in which a plan may be modified. The Court finds that a disposable income amount should not be modified unless there has been a substantial change in circumstances since confirmation. In the Court's view, the change in circumstances should justify the changes sought by the debtor. For instance, if the debtor suffered a reduction in income, he or she may seek a modification to reduce the amount paid to unsecured creditors. Incidentally, however, the Court may still find, given those circumstances, that the change requested does not justify the amount of reduction sought by the debtor.[5]

■ As an aside, the Court agrees that the refinancing on Debtors' home does not qualify as disposable income.[6] But, this fact is superfluous because it is how the refinancing effects Debtors' disposable income which is at issue, not the categorization of the refinancing itself. The Court needs to know whether the proposed refinancing will increase or reduce Debtors' disposable income[7], or whether the refinancing will not effect their disposable income at all. Currently, Debtors did not present any evidence to the Court regarding this issue. If the refinancing increases Debtors' disposable income, then that increase must be projected for the balance of the three years so as to determine what the unsecured creditors would receive over the term of the three-year plan. If the refinancing decreases Debtors' disposable income, the unsecured creditors are not receiving any dividends anyway, but the unsecured creditors should still get the difference between the pay-off to the secured creditors

4. Obviously, if the plan provides for 100% dividend to the unsecured creditors, an objection under § 135(b) would be unwarranted.

5. If a plan is modified after confirmation on a change of circumstances voluntarily, that change should be more closely scrutinized for bad faith than a modification based on an involuntary change in circumstances.

6. The Court is mindful of the fact that Debtors' ARM increased a mere six months into their confirmed plan. This should have been an anticipated change in circumstances. See, e.g., Keller, 329 B.R. at 700–01 ("[I]f the debtor wants to sell or refinance property and use the proceeds to fund, in part, the plan, the debtor may provide for this in the original plan. See 11 U.S.C. § 1322(a)(1) & (b)(8). Of course, if the debtor also wishes to maintain payments over less than 3 years without paying unsecured creditors in full, the debtor risks an objection from the trustee or an unsecured creditor pursuant to section 1325(b). Why should the debtor be permitted to preclude the trustee or an unsecured creditor from raising this objection by promising to fund payments from earnings over a 3–year period then, as soon as the plan is confirmed, ending the plan by making the lump sum payment?") (citation and footnote omitted). While the Court notes this fact, the Court is wary to chastise Debtors for failing to anticipate this change in circumstances, as there could have been other factors which precluded Debtors from including a refinancing in their Fifth Amended Plan.

7. For example, if the refinancing allows Debtors to pay off other, post-bankruptcy expenses, this would enhance Debtors' disposable income.

and the amount of interest reserved for the balance of the plan. In any case, the Trustee does not get a part of the refinancing.

With the facts currently before the Court, it is unclear whether there has been a reduction in Debtors' disposable income to justify the voluntary modification they seek. Debtors have not furnished all necessary information for the Court to make a finite determination. As a result, the Court will need to conduct an additional evidentiary fact-based hearing to determine the next course of action regarding their proposed modification. Because all of the legal issues are settled, a fact-finding hearing should expedite a final resolution to Debtors' request. Based upon the foregoing, it is

**ORDERED:**

1. Debtor's Motion to Modify denied without prejudice.

2. Debtors shall have the opportunity to file a new modification incorporating the concerns of the Court, as well as providing the information pertaining to Debtors' disposable income.