# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3363

ROBERT E. DISCH,

*Plaintiff-Appellee,*

v.

FAYE F. RASMUSSEN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-153-C—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED OCTOBER 28, 2004—DECIDED AUGUST 9, 2005

———————

Before RIPPLE, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* While many observers have touted Congress's recent amendments to the Bankruptcy Code as a major overhaul of the law in this area, the changes leave intact one primary purpose of the Code: to provide only honest debtors with relief. Under that standard, Faye Rasmussen should not have received a discharge of her debts, but the bankruptcy court initially ordered one. Later, the court revoked the discharge on grounds that Rasmussen contests. We hold that the bankruptcy court was authorized to take the action that it did, and we therefore affirm.

**I**

In January 2000, Rasmussen, the proprietor of a café and catering business called Faval, Inc., sought financial assistance from her friend, Robert Disch, when the business ran into difficulties. Among the business's woes were the inability to obtain credit and a pending default on two bank loans due at the end of the month. Disch agreed to provide assistance to Faval; he gave Rasmussen a check for $20,000 to stave off default and pledged to extend credit to the business. True to his word, between January 2000 and May 2001, Disch loaned more than $810,000 to Rasmussen to use in Faval. Approximately $590,000 of this amount was obtained through loans and lines of credit that Disch secured with his own collateral and personal guarantees. The remainder consisted of cash and checks from Disch to Rasmussen to cover Faval's operating expenses. The parties agreed that Rasmussen would make all payments due on the bank loans, but would not begin to pay Disch back for his personal loans until Faval became "profitable."

Notwithstanding the infusion of this considerable sum, Faval closed its doors in October 2001. Soon thereafter, Disch filed an action in the Wisconsin courts to recover his investments. On February 12, 2002, Rasmussen filed a Chapter 7 bankruptcy petition. As required by 11 U.S.C. § 341(a), the first scheduled meeting with her creditors took place on March 18; her creditors then had 60 days from that date to file objections to the discharge of all debts (11 U.S.C. § 727) or to seek to exclude particular debts from discharge (11 U.S.C. § 523). See FED. R. BANKR. P. 4004(a), (c) (cited hereafter as "Bankruptcy Rule X"). On May 15, Disch filed a complaint seeking to exempt from discharge the debt owed to him. The complaint alleged that the debt was based on Rasmussen's dishonesty in obtaining the loans, her defalcation or embezzlement, and her willful and malicious injury to him through embezzlement and conversion, actions that prevent dischargeability under Code § 523(a)(2), (a)(4),

and (a)(6) respectively. Because no creditors filed an objection under § 727 to contest the overall discharge, the bankruptcy court granted a general discharge to Rasmussen on August 19, reserving the determination of Disch's § 523(a) claims until after an adversary hearing was conducted.

Troubling facts regarding the manner in which Rasmussen handled the funds in connection with the debts she sought to discharge first came to light during the adversary proceeding. Although Rasmussen worked as a bookkeeper for 18 years at a large corporation with over 100 employees and $26 million in annual sales prior to purchasing Faval, she adopted a number of unusual (if not highly suspicious) bookkeeping methods for the business. She did not keep a general ledger for Faval or accurate records of her personal and business transactions; instead, she generally relied on her memory instead of books. As a result, she could not explain a large number of transactions, many of which involved the commingling of personal and business funds. For example, she claimed that she made a number of short-term loans to Faval, and though she was certain that she paid herself back, she could not remember the amount of these alleged loans, the source of the funds, when she paid herself back, or from which funds she did so. She could not track large sums from her many investors or recall how she used much of the money Disch lent. While she could account for the allocation of some funds, she was unable to explain what she did with the funds in excess of the allocation. In one instance, she used funds from Disch to pay off a personal debt. In 2001, after examining Faval's records, Disch's accountant discovered that despite Rasmussen's complaints about Faval's financial difficulties, the business's assets, including Disch's investments, exceeded its liabilities by approximately $550,000.

In addition to her unorthodox bookkeeping methods, Rasmussen engaged in a number of unscrupulous business

practices. She testified that she dealt in cash as much as possible in order to avoid a Wisconsin Department of Revenue levy for unpaid income taxes. To achieve this end, she frequently converted checks from Disch into cash or cashier's checks in her name instead of depositing them into a Faval account. She paid her suppliers with cashier's checks or cash and half the time, she paid her employees in cash. In addition to concealing assets from the State, this lack of a paper trail also made it difficult for creditors to trace the money that went into the business.

Rasmussen also attempted to engage in a number of transactions involving Disch's financial information without his knowledge, including unauthorized purchases on Disch's credit line. At one point, Rasmussen contacted one of the banks with whom Disch obtained a loan for the business to request that the address on file be changed from Disch's address to Faval's so that Disch would not be notified when she was late in making a payment on the loan.

At the adversary hearing, Disch argued that the particular debts Rasmussen owed to him should not be included within the general discharge she had received, relying on the various subsections of § 523 mentioned above. In addition, for the first time, he made the broader argument that Rasmussen was not entitled even to a general discharge of her debts, because she was disqualified under several of the provisions of § 727(a). Section 727 requires the bankruptcy court to grant a discharge unless it finds that certain specified kinds of misconduct or fraud disentitle the debtor to this relief. Rasmussen objected to the bankruptcy court's consideration of Disch's new argument on the ground that Disch had not properly raised this theory in the adversary proceeding.

The court decided against Disch on his claim that his particular debts should be found nondischargeable, and Disch has not taken a cross-appeal from this determination.

Nevertheless, it allowed Disch to amend the pleadings to add the § 727 theory and then found that Rasmussen had no right to a discharge under § 727. The problem, as the court recognized, was that Rasmussen's conduct did not appear to meet the grounds for revocation enumerated in § 727(d), which specifically addresses the court's power to revoke a discharge. It found, however, that § 727(d) did not exhaust the grounds for revocation. Relying on its equitable authority under 11 U.S.C. § 105(a), it found that revocation was necessary and authorized in this situation to prevent manifest injustice. It also held in the alternative that it had authority to revoke the order of discharge under Bankruptcy Rule 9024, on the theory that the discharge resulted from the court's own mistake. The net result of all this was a judgment in favor of Disch for $657,700. The district court affirmed the decision in all respects, although it did not address the alternate ground for revocation under Bankruptcy Rule 9024.

## II

On appeal, Rasmussen challenges the revocation of her discharge on a variety of procedural grounds. She first takes issue with the bankruptcy court's consideration of the § 727 claim. She argues that it was improper and futile because her discharge had already been granted in conformity with § 727 and Bankruptcy Rule 4004. She also argues that it was an abuse of the court's discretion to allow the amendment of the pleadings when it did, because she had no opportunity to defend against the claim. Finally, Rasmussen challenges the court's authority to revoke her discharge and argues that it was an impermissible exercise of the court's equitable powers under § 105(a) and Bankruptcy Rule 9024.

We have stated that "the Bankruptcy Code was meant to discharge only an honest debtor from his or her debts," and

that "the Code 'should be liberally applied to protect the [debtor] only in those cases where there is no intent to violate its provisions.' " *In re Suttles*, 819 F.2d 764, 766 (7th Cir. 1987) (quoting *Matter of Garman*, 643 F.2d 1252, 1257 (7th Cir. 1980)). A debtor in a Chapter 7 liquidation case qualifies for an order discharging her nonexempt debts if she satisfies the conditions stated in § 727(a) of the Bankruptcy Code. 11 U.S.C. § 727(a) (grounds for entitlement to a discharge); see *Kontrick v. Ryan*, 540 U.S. 443, 447 (2004). The debtor cannot obtain a discharge, however, if one of the conditions specified by the statute exists, such as where the debtor had transferred, removed or concealed property within a year prior to the filing of the petition, see 11 U.S.C. § 727(a)(2), failed to keep or preserve any recorded information from which her financial condition or business transactions might be ascertained, see 11 U.S.C. § 727(a)(3), or failed to provide a satisfactory explanation for any loss of assets or deficiency of assets preventing the satisfaction of liabilities, see 11 U.S.C. § 727(a)(5).

Creditors have the right to object to a discharge, if they act in a timely manner. Although no statute specifies a time limit to file such an objection, Bankruptcy Rule 4004(a) requires that a complaint "be filed no later than 60 days after the first date set for the meeting of creditors" unless the court allows an extension of time. After the expiration of the time period, "the court shall forthwith grant the discharge," unless a complaint objecting to the discharge has been filed, a motion to dismiss the case is pending, or the time for filing has been extended. Bankruptcy Rule 4004(c). As the bankruptcy court noted, it is permissible as a procedural matter for a court to grant a discharge when no complaint objecting to discharge has been filed at the expiration of the 60-day period, notwithstanding a pending claim under § 523 seeking to exempt a particular debt from discharge. See Administrative Office of the United States Courts, Bankruptcy Clerk's Manual (1997); Bankruptcy

Rule 4007 Committee Notes (1983) ("Although a complaint that comes within § 523[ ] must ordinarily be filed before determining whether the debtor will be discharged, the court need not determine the issues presented by the complaint filed under this rule until the question of discharge has been determined under Rule 4004."). Here, the court clerk issued Rasmussen's discharge under this relatively automatic procedure even though, as the court later concluded, she failed to meet the conditions stated in § 727(a). The latter point underlies the court's decision to undo the discharge. Rasmussen has not taken issue with it before this court, wisely in our opinion. The record from the adversary proceeding strongly supports the conclusion that she concealed property within one year of her Chapter 7 filing, failed to keep adequate business records, and failed satisfactorily to explain her losses. These actions brought her within the conditions described in § 727(a)(2), (a)(3), and (a)(5), any one of which would defeat her right to a general discharge.

Rather than claim a substantive right to her discharge, Rasmussen argues here only that there was no procedure available to the bankruptcy court to revoke the action it had already taken. She first urges that the bankruptcy court had no authority to consider the § 727 claim because Disch raised it after the time period for raising objections to discharge allowed by Bankruptcy Rule 4004 had expired and the order of discharge had issued. If by this she means that we should treat Bankruptcy Rule 4004's 60-day time limit for filing a § 727 objection as a jurisdictional predicate that deprives the court of all power to consider a late claim, the short answer is that the Supreme Court has rejected this characterization of the rule. See *Kontrick*, 540 U.S. at 447 (holding that Bankruptcy Rule 4004 is not "jurisdictional" and falls within a court's adjudicatory authority). If she is arguing that orders of discharge are somehow immune from reconsideration because of their very nature,

we must again disagree. There is no reason to think that such a rigid rule prevails in bankruptcy, when the power to reconsider judgments is so well established throughout the judicial system. See, *e.g.*, FED. R. CIV. P. 59, 60 (motions for new trial, for alteration or amendment of judgment, and for relief from judgment or order); FED. R. APP. P. 40 (panel rehearing); 28 U.S.C. § 46(c) (rehearing en banc). As long as the bankruptcy proceeding has not reached a final resolution, the bankruptcy court has the authority to reconsider the propriety of a discharge, as long as it does so in conformity with applicable restrictions under the statute and rules.

## III

The only serious point is therefore whether the bankruptcy court acted in excess of the authority granted to it under the applicable statutes and rules. We consider first whether the bankruptcy court abused its discretion when it allowed Disch to amend the complaint to include the § 727(a) claim. This argument misses an essential point about federal procedure: parties are not required to plead legal theories. See *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Disch has wanted one and only one thing all along: a ruling that Rasmussen must pay him what she owes, or, put in bankruptcy terms, that her debts to him should not be discharged. Under FED. R. CIV. P. 54(c), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7054, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." This means that it is too late for Rasmussen to obtain any relief solely because the pleadings were or were not amended.

In any event, the court was well within its authority to permit the amendment. Bankruptcy Rule 7015 states that

FED. R. CIV. P. 15 applies in adversary proceedings. Rule 15 in turn allows the court to consider claims outside those raised in the pleadings, as long as the objecting party would not be prejudiced and the trial amendment will further the consideration of the case on the merits. See FED. R. CIV. P. 15(b) (stating standard that applies when objection is made to the new issues). Where the time limit for filing a new claim has passed, Rule 15(c) allows the amended pleading to relate back to the date of the original complaint if the claim arises out of the same conduct, transaction or occurrence.

Both the bankruptcy court and the district court found that Rasmussen failed to show that she was prejudiced by the addition of the § 727 issues. She had ample notice that she would have to explain what she did with Disch's money—that was what the whole adversary proceeding was about. Disch's complaint alleged that Rasmussen failed or refused to provide an adequate accounting of Favel's activities and the financial status of the company. Rasmussen was questioned at length at her depositions about the extent to which she kept (or did not keep) personal and business records. At the trial, she was given the opportunity to explain the disappearance of the assets. The only reason she was unable to do so, as the bankruptcy court found, was because she had neither sufficient records nor a satisfactory explanation for the absence of the records. In the district court, Rasmussen also failed to point to any evidence that she could have offered to explain where she had spent the money. And now, before this court, she proffers no evidence or argument to dispute the bankruptcy court's conclusion that her conduct did not entitle her to a discharge.

Because Bankruptcy Rule 4004 is not a jurisdictional rule but rather akin to a statute of limitations, see *Kontrick*, 540 U.S. at 447, allowing the § 727 claim to relate back to the date of the complaint is proper so long as it was sufficiently linked to the claims raised there. Rasmussen argues that *In*

*re Bozeman*, 226 B.R. 627 (B.A.P. 8th Cir. 1998), holds as a matter of law that no such link can ever exist between a claim based on § 523 and one based on § 727. We do not read *Bozeman* as establishing such a bright-line rule. The amended complaint in *Bozeman* expanded the scope of the issues raised in the original complaint, and it was this expansion that made amendment of the pleadings improper there. Disch's § 727 claim, in contrast, arose from the same conduct, transactions and occurrences as his § 523 claim. As the district court noted, the complaint, discovery and entire adversary proceeding focused on what Rasmussen did with the money Disch loaned to Faval from 2000 to 2001. Accordingly, the bankruptcy court did not abuse its discretion when it permitted Disch to amend his complaint to add the § 727 theory of recovery.

Even if Disch's § 727 theory was properly before the bankruptcy court, the question remains whether the bankruptcy court was entitled to take the corrective action that it did in response to this theory, or if something in the Bankruptcy Code or rules barred Disch's right to recover. As we noted earlier, the bankruptcy court invoked two independent grounds for its action: its equitable powers under 11 U.S.C. § 105(a) and its power to correct its own orders under Bankruptcy Rule 9024.

The Bankruptcy Code places strict limits on a court's authority to revoke a discharge. The statutory grounds set forth in 11 U.S.C. § 727(d) permit revocation where the discharge was obtained through fraud of the debtor, the debtor concealed property from the bankruptcy estate, or the debtor refused to comply with court orders. The parties agree that § 727(d) provides no authority for revocation under the facts of this case, and that was the bankruptcy court's view as well. The court believed nevertheless that Rasmussen's discharge had to be revoked to carry out the primary provisions of the Bankruptcy Code, in particular § 727(a), because allowing it to stand would result in

manifest injustice. To prevent such a result, it exercised its equitable authority under § 105(a).

Section 105(a) reads as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders, rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The question of how to interpret this statute is one of law, and so we apply *de novo* review to this part of the case.

Despite the open-ended language of § 105(a), courts have carefully limited the circumstances in which it should be used. Otherwise, there is a real risk that more particular restrictions found throughout the Code would amount to nothing, because the court could always use the residual equitable authority of § 105(a). For that reason, this court has commented that the powers conferred by § 105(a) must be exercised "within the confines of the Bankruptcy Code." *In re Lloyd*, 37 F.3d 271, 275 (7th Cir. 1994) (citation omitted). We warned that a judge does not have "free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be," *Matter of Chicago, Milwaukee, St. Paul, & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986), or use the court's equitable power to circumvent the Code. *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) (Section 105(a) "does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by § 105(a) is one to implement rather than to override."). The question here is whether the court's

reconsideration and vacation of an order of discharge is an appropriate exercise of its equitable power under § 105(a).

Our decision in *In re Greenig*, 152 F.3d 631 (7th Cir. 1998), is instructive, if not dispositive, on this issue. There, a creditor asked the court to allow it to file untimely proofs of claim after the debtors' reorganization plans had been confirmed. We held that the bankruptcy court had improperly exercised its authority under § 105 when it allowed the creditor to circumvent Bankruptcy Rule 3002(c) and file the untimely claims. *Greenig*, 152 F.3d at 635. While our holding did not absolutely preclude the court from allowing late-filed claims, the authority to do so must be based on grounds found elsewhere in the Code or the rules (such as under Bankruptcy Rule 7015) and not under the court's general § 105(a) powers.

The bankruptcy court here took the position that *Greenig* did not control the outcome, because in this case it was acting to enforce a specific Code provision, § 727(a), not to achieve a reshuffling of the equities in a manner contrary to the provisions of the Code. But this ignores the fact that Bankruptcy Rule 4004 structures the way in which a claim under § 727(a) must be presented. If § 105(a) offered a way around the restrictions on filing § 727(a) claims found in Bankruptcy Rule 4004, then the rule might as well not exist. Similarly, such a broad interpretation of § 105(a) would make the list of grounds for revoking a discharge found in § 727(d) meaningless; anything not in the list could come in through the back door of § 105(a). We conclude, consistently with *Greenig,* that the revocation of Rasmussen's discharge exceeded the court's equitable powers under § 105(a).

Although the bankruptcy court did not have authority to revoke the discharge under § 105(a), this does not mean the court was without *any* authority to set matters right. The bankruptcy court also relied on Bankruptcy Rule 9024,

which applies FED. R. CIV. P. 60 to cases under the Code, with several exceptions, one of which we discuss below. Rule 60(b) allows the court to vacate an order that it entered as a result of mistake, inadvertence, excusable neglect, fraud, or to conform to newly discovered evidence, or for any other reason justifying relief from the operation of the judgment.

Rasmussen argues that Bankruptcy Rule 9024 does not apply to the revocation of a discharge because one of the exceptions it carves out from FED. R. CIV. P. 60 is for "a complaint to revoke a discharge in a chapter 7 liquidation case," which "may be filed only within the time allowed by § 727(e) of the Code." Section 727(e) permits a complaint seeking revocation to be filed within one year after the discharge was granted. We do not see how this provision precludes the court from setting aside an order of discharge under Bankruptcy Rule 9024 six months after its issuance, which was the case here. Final bankruptcy orders can be set aside under Bankruptcy Rule 9024, see *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988), and nothing in the rule indicates that it does not apply to the revocation of discharges. See *In re Cisneros*, 994 F.2d 1462, 1466 (9th Cir. 1993) (recognizing that Bankruptcy Rule 9024 provides authority for the court to revoke a discharge); *In re Midkiff*, 271 B.R. 383, 386 (B.A.P. 10th Cir. 2002) (same); *In re Ali*, 219 B.R. 653, 654 (Bankr. E.D.N.Y. 1998) (same); *In re Mann*, 197 B.R. 634, 635 (Bankr. W.D. Tenn. 1996) (same); *In re Burgett*, 95 B.R. 524 (Bankr. S.D. Ohio 1988) (same).

Rasmussen also suggests that using Bankruptcy Rule 9024 to vacate a discharge order is essentially an end-run around the express terms of § 727(d). This argument assumes, however, that the standards for relief under Bankruptcy Rule 9024 are identical to those under § 727(d), and this is incorrect. Section 727(d) makes revocation mandatory if the criteria spelled out in that section are satisfied, while Bankruptcy Rule 9024 (like its civil counter-

part Rule 60(b)) places a heavy burden on the party seeking to undo an existing judgment. In addition, Bankruptcy Rule 9024 incorporates the one-year time limit for motions under the analog to Rule 60(b)(1), (2), or (3), while § 727(d) has no such built-in deadline. It is reasonable to allow correction on any equitable ground within a short time period, and then to impose stricter restrictions thereafter. A closer look at § 727(d) shows that it creates a two-way street: it gives a *right* to revocation to the trustee, creditor, or United States trustee when fraud is proven, and at the same time it protects the debtor by limiting the circumstances under which the trustee, creditor, or United States trustee has such a right. This limited right of the debtor is not infringed when a court exercises its discretion to reopen an order of discharge for one of the reasons recognized by Bankruptcy Rule 9024.

Our conclusion is consistent with the one reached by the Ninth Circuit in an analogous situation in *In re Cisneros*, 994 F.2d 1462 (9th Cir. 1993). There, the court had to reconcile the limited grounds for vacating a discharge order in a Chapter 13 proceeding recognized by 11 U.S.C. § 1328(e) with Bankruptcy Rule 9024. As in our case, the bankruptcy court had relied on Bankruptcy Rule 9024 to vacate a discharge order that had been issued in a Chapter 13 proceeding, even though it could not have revoked the order under 11 U.S.C. § 1328(e). The court rejected the debtors' argument that the court's application of Bankruptcy Rule 9024 conflicted with § 1328(e) by expanding the grounds for revocation. *Id.* at 1465. It found that the debtors should not be able to use § 1328(e) as a sword when they had no right to the discharge to begin with. *Id.* at 1466. The court also found no reason to believe that Congress intended § 1328(e) to preclude the bankruptcy court from exercising its discretion to correct a mistake. *Id.*

In the case before us, the bankruptcy court noted that it was only at the adversary hearing that it became aware of

the inappropriateness of Rasmussen's order of discharge, which had been granted more or less automatically. Had the court known of the facts concerning her conduct, it would never have issued the order. We find that the initial grant of a discharge for Rasmussen was the sort of "mistake" or "inadvertence" that the court was empowered to reach under Bankruptcy Rule 9024, and the court did not abuse its discretion by taking corrective action under the circumstances presented here.

Finally, Rasmussen argues that the court abused its discretion because it referred to FED. R. CIV. P. 60(a) (as incorporated by Bankruptcy Rule 9024), and there was no showing of the type of clerical mistake covered by that subsection of the rule. At most, however, this argument criticizes the court for a citation error. Rasmussen is correct that the mistake here was not the kind for which Rule 60(a) was designed. It does fall within Rule 60(b)(1), however, and nothing in Bankruptcy Rule 9024 prevents the use of that part of the civil rule. We may affirm the judgment below on any ground supported by the record. *Boyd v. Illinois State Police*, 384 F.3d 888, 897 (7th Cir. 2004).

**IV**

For these reasons, we AFFIRM the judgment of the district court.[*]

A true Copy:

    Teste:

                    _____

                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*

---

[*] Disch has moved to dismiss this appeal altogether, representing to this court that on July 5, 2005, Rasmussen was convicted in Wisconsin state court of violating the Wisconsin securities laws. That court is expected to issue an order requiring her to make restitution to Disch in the full amount of the monies he loaned to her, and Disch argues that the restitution order will make this appeal moot. We disagree. Our holding goes beyond any restitution order and upholds the bankruptcy court's decision to revoke the general discharge in bankruptcy that it had granted to Rasmussen, which is a matter with at least potential significance beyond any debt owed to Disch. In addition, we see no reason why an additional reason for Rasmussen must pay Disch affects the analysis of these debts for bankruptcy purposes. We therefore DENY the motion to dismiss.