In re Marla A. SNAVLEY, Debtor.

John C. Melaragno, Trustee, Movant

v.

Jason J. Mazzei, Esq. and Mazzei & Associates and Marla A. Snavley, Respondents.

No. 12–11176–TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

Signed Nov. 12, 2013.

Jason J. Mazzei, Mazzei & Associates, Pittsburgh, PA, Thomas James Minarcik, Erie, PA, for Debtor.

John C. Melaragno, Erie, PA, Trustee.

### *ORDER*

THOMAS P. AGRESTI, Bankruptcy Judge.

A hearing was held on October 3, 2013, on the Trustee's *Motion to Approve Settlement and Revoke Debtor's Discharge* ("Motion") at Doc. No. 109 and the matter was taken under advisement. After due consideration, the Court has little trouble in concluding that the proposed settlement is beneficial to all interested parties and should be approved. However, the portion of the *Motion* seeking a revocation of the discharge previously granted to the Debtor on June 14, 2013, Doc. No. 102, and a termination of the case without discharge, presents a much thornier issue.[1]

On the one hand, as is clear by its prior, record statements, the Court is certainly sympathetic to the plight of the Debtor. As has been well-documented previously in the case, the Debtor was in a vulnerable position during the time period prior to the case filing due to the recent death of her husband. The Debtor was not well served by her former attorney, who very questionably, advised her to file a bankruptcy when there were much better options available to her. Then, once the case was filed, and after it had become apparent what had happened, no one took any steps on the Debtor's behalf to prevent a discharge from being entered in the normal course.[2]

■■■ On the other hand, when a Chapter 7 discharge order has been entered in a case it is not something that can just casually be set aside. The Court has previously addressed this topic in *In re Grabowski*, 462 B.R. 534 (Bankr.W.D.Pa.2011), finding that a debtor may not "waive" a discharge entered pursuant to 11 *U.S.C.* § 727(a)(10) post discharge. Under the circumstances presented in *Grabowski*, the debtor also lacked standing to move for a revocation of the discharge because of the debtor misconduct component of 11 *U.S.C.* § 727(d). The Court found in *Grabowski* that, not only is this conclusion in accordance with the law, it is also prudent from a policy perspective in that it prevents

---

1. The Parties indicated that they wished to go forward with the settlement whether or not the Court also approved a revocation of the Debtor's discharge.

2. The Debtor's successor Counsel explained at the hearing on the Trustee's *Motion* that he realized issuance of the impending discharge was on the horizon but chose not to seek a delay in its entry since not sure of the final result of the Trustee's sanction action, opting for "a bird in the hand rather than in the bush."

abuse of the bankruptcy process by denying debtors the ability to revoke a discharge and thereby circumvent the statutory time limits regarding the entry of successive discharges. 462 B.R. at 538.

Although *Grabowski* appears at first blush to be an insurmountable obstacle blocking any possibility of revoking the Debtor's discharge here, there are two notable differences between it and the present case that compel a more penetrating inquiry before any final conclusion can be reached. First, the attempted revocation in the present case is being pursued not by the Debtor, but by the Trustee (albeit with the Debtor's full support). Thus, the lack of standing that hampered the debtor in *Grabowski* is not implicated here and need not be discussed further.

The second difference is more complex. Unlike *Grabowski*, the Trustee's effort here to revoke the Debtor's discharge is not based on either waiver under *Section 727(a)(10)* or debtor misconduct under *Section 727(d)*. Indeed, the Trustee explicitly acknowledges that the Debtor has not committed any bad acts under *Section 727(d)*. *See Trustee's Brief,* Doc. No. 115 at 3. The primary focus of the Trustee is instead on *Fed.R.Bankr.P. 9024*, incorporating *Fed.R. Civ.P. 60(b)*,[3] which allows a court to relieve a party from a final order for a variety of listed reasons, concluding with a "catch-all" of "any other reason that justifies relief." *Fed.R.Civ.P. 60(b)(6)*. The Trustee argues that the totality of

circumstances here justifies a revocation of the discharge.

Can a motion to revoke discharge under *Rule 9024* succeed where a motion under *Section 727(d)* would admittedly fail? There is some support for the view that *Rule 9024* may be the basis for the revocation of a discharge order in such circumstances. *See, e.g., Disch v. Rasmussen,* 417 F.3d 769 (7th Cir.2005) ("Final bankruptcy orders can be set aside under Bankruptcy Rule 9024 … and nothing in the rule indicates that it does not apply to the revocation of discharges"). *See also In re Cisneros,* 994 F.2d 1462 (9th Cir. 1993) (reaching a similar conclusion with respect to the revocation of a Chapter 13 discharge). In reaching the conclusion it did, the *Disch* court rejected the argument that allowing *Rule 9024* to be used to revoke a Chapter 7 discharge would enable an end-run around the provisions of *Section 727(d)*, finding that there were different standards for relief and different timing requirements under the two provisions.

The Trustee has not, however, directed the Court to any binding authority from the Third Circuit in support of this view. The Court's own research on the issue raises significant doubt that it can adopt the approach taken in *Disch*. The basis for this "doubt" is found in *In re Fesq,* 153 F.3d 113 (3d Cir.1998), which was a Chapter 13 case but is highly relevant in the present case.[4]

---

3. The Trustee has also proposed *11 U.S.C. § 105(a)* as a basis for revocation of the discharge. That provision allows bankruptcy courts to enter any order necessary or appropriate to carry out the provisions of the *Bankruptcy Code*. However, *Section 105(a)* has only a limited scope and does not give a bankruptcy court the power to create substantive rights that would otherwise be unavailable under the *Code*. *See In re Joubert,* 411 F.3d 452, 456 (3d Cir.2005). Given the limited scope of Section 105(a), the Court has in the

past resisted facile resort to that statute as a means to an end. For the same reason, the Court rejects *Section 105(a)* as a basis to provide the requested relief here. *See, e.g., In re Seymour,* 2013 WL 3963695 (9th Cir. BAP Aug. 1, 2013) (*Section 105(a)* cannot be used as a basis for revocation of discharge).

4. *Fesq* remains good law. In the recent case of *In re Rodriguez,* 521 Fed.Appx. 87 (3d Cir. 2013) one of the parties argued that the decision in *United Student Aid Funds, Inc. v. Espi-*

In *Fesq*, the debtor filed a plan which was confirmed without objection by the lone creditor in the case—an individual who had obtained a judgment against the debtor several years earlier and had been vigorously pursuing execution on it ever since. Shortly after the confirmation order was entered, the debtor moved to vacate the creditor's judgment lien pursuant to the confirmed plan. The creditor then promptly filed a cross-motion seeking to have the confirmation order vacated on the grounds that it had only failed to object to the plan because of a "computer glitch" at its attorney's firm that had caused the incorrect objection deadline to be noted.

The Bankruptcy Code provision dealing with the revocation of a Chapter 13 plan confirmation order provides:

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

*11 U.S.C. § 1330(a)*. The debtor in *Fesq* had obviously not procured the confirmation order by fraud, and the issue for the Third Circuit was whether the order could nevertheless be revoked in the face of this statutory language. The court found that the "procured by fraud" phrase could not simply be ignored as mere surplusage, and by keeping that phrase in the statute there were only two possible interpretations of *Section 1330(a)*:

> First, the section can be read to say that a confirmation order can be revoked only upon a showing of fraud, and to set a 180-day time frame within which a motion for such relief may be tendered. Second, the section can be read as only prescribing a 180-day time limit on motions to revoke orders that were procured by fraud, without speaking at all to the subject of other potential grounds for revocation.

153 F.3d at 115. The creditor urged the adoption of the expansive second interpretation, pointing to *Rule 9024* and arguing that the computer error qualified as mistake, inadvertence or excusable neglect under the incorporated *Rule 60(b)*. The *Fesq* court noted that the creditor had "wisely" avoided arguing that *Rule 9024* "trumped" *Section 1330(a)*, instead characterizing his position as being that *Section 1330(a)* "complements" *Rule 9024* in the sense that Rule 9024 sets forth all of the grounds upon which a confirmation order might be revoked, while *Section 1330(a)* simply shortens the deadline for challenging confirmation orders for fraud to 180 days.

Despite this initial praise, the court in *Fesq* ultimately rejected the creditor's argument as being illogical and having "nothing to commend it" because it would be the equivalent of permitting the drafters of *Rule 9024* to deprive the final phrase of *Section 1330(a)* of any substantive effect. The court found that to be unacceptable on separation of powers grounds because the Bankruptcy Rules cannot abridge, enlarge or modify the substantive rights afforded in the Bankruptcy Code. 153 F.3d at 117. Reasons of plain meaning, logic, case law, and policies underlying the Bankruptcy Code were also cited as reasons for the court's view.

---

*nosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) had, in effect, overruled *Fesq* and found *Rule 60(b)* to encompass confirmation orders. The Third Circuit disagreed, quoting from the *Espinosa* opinion wherein the Supreme Court said it was not settling the question of whether *Fesq* was correctly decided. The *Rodriguez* court found that the decision in *Fesq* made no distinction between any of the six enumerated grounds under *Rule 60(b)*, and that the case continued to control. 521 Fed.Appx. at 91.

Thus, the court concluded that the only basis for revoking a confirmation order in Chapter 13 is if it was procured by fraud.[5]

While *Fesq* was decided in the context of Chapter 13, it appears to have obvious implications for this Chapter 7 matter as well. Similar to what *Section 1330(a)* provides for plan confirmation orders, *Section 727(d)* lists specific grounds for the revocation of a discharge order. It is admitted by the Trustee that none of those grounds exists. The Court is unaware of any reason why the logic of the holding in *Fesq* would not be equally applicable here. A number of other courts have reached that same conclusion. *See In re Nader,* 1998 WL 767459 (Bankr.E.D.Pa. Oct. 30, 1998) (the reasoning behind *Fesq's* rejection of equitable grounds to circumvent the plain language of *Section 1330(a)* applies with equal force to *Section 727(d)* because in the context of Chapter 7, it serves a purpose very much analogous to the purpose served by *Section 1330* in Chapter 13); *In re Bugarenko,* 373 B.R. 394 (Bankr. E.D.Pa.2007); *In re Rodwell,* 280 B.R. 100 (Bankr.D.N.J.2002).

This result may seem harsh in the context of the present case—the blamelessness of the Debtor in the present case, when considered in isolation, seeming to cry out for relief. The dissenting opinion in *Fesq* expresses well this very sentiment, stating that the decision in the case will "tie the hands of bankruptcy judges in situations where justice cries out for review of a previously entered judgment." 153 F.3d at 123. As attractive as this alternative view might seem with respect to the facts involving the Debtor, the Court is not free to adopt it. When one district court judge decided to follow a dissenting view from a Third Circuit panel opinion rather than the majority decision, that court was quick to set that judge straight:

> Whatever may be the personal views of the district court as to the merits vel non of a decision of this court, the district court is not free to "adopt" the dissent. This court is strict in its adherence to the precedent of its earlier opinions. Our own *Internal Operating Procedures* are explicit and provide,
>
>> It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.
>
> *Internal Operating Procedures of the Court of Appeals for the Third Circuit, Chapter 8. C.* If the judges of this court are bound by earlier panels, a fortiori district court judges are similarly bound. Recognition of the hierarchical nature of the federal judiciary requires no less.

*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 867 (3d Cir.1984).

Moreover, when a broader view is taken as to the effect the decision flowing from *Fesq* may have on the bankruptcy system as a whole, perhaps the seemingly harsh result is tempered a bit. In that regard, the following statement from the majority opinion in *Fesq* is instructive:

> [The rejected creditor's argument] ... would open the courtroom doors to a large number of post-confirmation attacks. Those added challenges could seriously undermine the integrity of the Chapter 13 proceedings, as dissatisfied creditors could seek to drag out the

---

**5.** The *Fesq* court did leave open the possibility that Rule 60(b) could be used as a vehicle to correct some problems with a Ch. 13 confirmation order, such as clerical error, without violating *Section 1330(a).* The reasons advanced by the Trustee here to revoke the discharge are not of the type that might fall into such exception.

litigation by bringing themselves under Rule 60(b)'s broader rubric in an attempt to extract concessions.

153 F.3d at 120. That same concern applies here.

Were the Court to ignore *Section 727(d)* in order to provide relief that no one opposes, for a very sympathetic Debtor, it could serve as a precedent and unintentionally open the door for a myriad of challenges to Chapter 7 discharge orders in other cases, by debtors and creditors alike, that have heretofore been viewed as inviolable except in very limited circumstances involving debtor misconduct. The Supreme Court itself has long recognized the dangers that flow from trying to mold the law to meet a particular case:

> Extreme cases often test the bounds of established legal principles. There is a cost to yielding to the desire to correct the extreme case, rather than adhering to the legal principle. That cost has been demonstrated so often that it is captured in a legal aphorism: "Hard cases make bad law."

*Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 899, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

In any event, whatever might be the Court's personal view as to where true wisdom lies in this matter is irrelevant since it finds, for the reasons stated above, that it is legally required to deny the Trustee's requested revocation of the discharge order.

**AND NOW,** this **12th** day of **November, 2013,** it is **ORDERED, ADJUDGED** and **DECREED** that,

(1) The *Motion* is **GRANTED in part** such that the proposed settlement with Jason Mazzei, Esq., is approved.

(2) The *Motion* is **DENIED in part** such that the discharge order previously entered at Doc. No. 102 remains in effect and will not be revoked.

(3) **On or before November 19, 2013,** Jason Mazzei, Esq. shall make the following payments totaling $14,581.64 to the following individuals:

| | | |
|---|---|---:|
| (a) | Marla M. Snavley | $1,829.16 |
| (b) | Thomas Minarcik, Esq. | 4,120.00 |
| (c) | John C. Melaragno, Esq. (toward fees) | 2,261.64 |
| (d) | John C. Melaragno, Esq. (for distribution to unsecured creditors) | 6,370.84 |
| | Total | $14,581.64 |

(4) The Trustee, John C. Melaragno, Esq., is further authorized to distribute the funds he has on hand in the approximate amount of $7,894, plus any accumulated interest, being held in the Trustee's Bankruptcy Account as previously paid to him by the Respondent regarding issues related to this matter, to himself for the remainder of the fees and costs due and payable to him for Trustee compensation and costs and Attorney for the Trustee compensation and costs.

(5) Since all Estate funds have been properly accounted for and completely disbursed as a result of the settlement of this matter and the within Order, it appears to the Court that the Trustee should be able to simply move to close this case without further compliance with the typical close out procedures required by the United States Trustee ("UST"), and the Court approves such an approach. However, if for some reason the UST requires the Trustee to go through such a procedure even under these circumstances, the Court will defer to the UST in that regard.